**FILED**

APR 14 2023

KATHY MARTIN
WALLA WALLA COUNTY CLERK

COPY

SUPERIOR COURT OF THE STATE OF WASHINGTON

FOR WALLA WALLA COUNTY

JOHN DOE;

      Plaintiff,

v.

THE BOARD OF TRUSTEES OF
WHITMAN COLLEGE, a non-profit
corporation,

      Defendant.

Cause No. **23 2 00228 36**

**COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES**

## I.    NATURE OF THE CASE

1.    This case arises out of the improper actions and flawed Title IX procedures employed by the Defendant the Board of Trustees of Whitman College ("Defendant," "Whitman," or "The College") concerning false allegations of sexual misconduct levied against the Plaintiff, a male undergraduate student at Whitman.

2.    As a direct result of Whitman's failure to (1) conduct an appropriate investigation, and (2) provide Plaintiff with the same substantive rights as the complainant, Defendant

COMPLAINT FOR DAMAGES -                    1

**Cedar Law PLLC**
113 Cherry Street
PMB 96563
Seattle, Washington 98104
Phone (206) 607-8277 • Fax (206) 237-9101

wrongfully, unjustifiably, and illegally expelled Plaintiff from their College. The decision to expel Plaintiff was motivated in part by his gender.

3.     Whitman's actions and inactions in this matter violated the requirements of Title IX of the Education Amendments of 1972, its contract with Plaintiff, the covenant of good faith and fair dealing, and the Consumer Protection Act.

4.     Plaintiff has exhausted his internal remedies with the College and therefore, Plaintiff seeks relief from this Court, including an order directing the College to reinstate Plaintiff as a student so that he may graduate, and a dismissal of the allegations against him, and monetary damages for the injury he has suffered.

## II.     PARTIES

5.     Plaintiff John Doe[1] is a senior at Whitman College, currently double majoring in Economics and Psychology. Prior to the false allegations being raised against him, he was expecting to graduate from Whitman in May 2023.

6.     Defendant Board of Trustees of Whitman College is the official name of the non-profit corporation that governs and operates Whitman College. Whitman College is located in Walla Walla County, Washington and is organized and governed by the laws of Washington. Whitman receives federal financial assistance through, among other ways, receiving student loans through the United States Department of Education.

## III.     JURISDICTION AND VENUE

7.     Jurisdiction is appropriate in Walla Walla County because the actions and inactions giving rise to this complaint occurred on Whitman's campus, which is located in Walla

---

[1] A motion to proceed under pseudonym is forthcoming.

COMPLAINT FOR DAMAGES -                              2

**Cedar Law PLLC**
113 Cherry Street
PMB 96563
Seattle, Washington 98104
Phone (206) 607-8277 • Fax (206) 237-9101

1    Walla County. Similarly, the defendant is located in and has its principal place of business in

2    Walla Walla County.

### IV.    FACTS

A.    **Plaintiff's Enrollment at Whitman and Relationship with Complainant**

8.    Plaintiff John Doe ("Doe", he/him) and the Complainant from the underlying Title

IX proceeding ("Complainant", femme nonbinary they/them) met during the first week of

freshman year and were romantically and sexually involved between September 2019 to

December 2019, until Doe broke up with the Complainant. During that time, Doe and

Complainant frequently engaged in consensual sexual activity.

9.    In December 2019, Complainant accused another male (identified as Witness I in

the underlying Title IX investigation) of trying to force himself sexually on them. Witness I was

one of their best friends up until that point. Witness I later told the Title IX investigator:

> When [Complainant] spread this lie, it was absolutely devastating
> for me. It basically put me on social suicide. I didn't want to leave
> my room. I thought that everyone on campus thought that I was
> some rapist or pervert […] after that I just never really spoke with
> [Complainant] again.

10.    Complainant ultimately backed down from the allegation against Witness I and

apologized to him for treating him badly.

11.    Throughout fall semester, Complainant stopped attending class, would stay in bed

for many hours during the day, and did not pass the semester. In retrospect, their then-roommate

(identified as Witness A (she/her) in the underlying Title IX investigation) believes Complainant

was cycling through a depressive episode because of their bipolar disorder and provided in a

sworn declaration:

COMPLAINT FOR DAMAGES -                    3

**Cedar Law PLLC**
113 Cherry Street
PMB 96563
Seattle, Washington 98104
Phone (206) 607-8277 • Fax (206) 237-9101

Although they asked me to wake them up every morning because their phone was broken and they didn't have an alarm, [Complainant] eventually revealed to me during freshman year that they simply were not attending class and were going back to bed after I left the dorm. Looking back, it appeared they were having a depressive episode related to their mental health, and [Complainant] would talk about being depressed but they were not diagnosed or medicated at that time.

12.    In February 2020 Doe began having an intimate relationship with Complainant's friend (identified as Witness G (she/her) in the underlying Title IX investigation).

13.    Also in February 2020 Doe was disciplined by Whitman College for cursing at his resident advisor and excluded from campus for the remainder of the semester. Despite their having broken up romantically, Complainant organized students from the dorm to advocate on Doe's behalf.

14.    After the COVID shutdown starting in March 2020 Doe and Complainant stayed in friendly remote contact including some "sexting" during summer 2020.

15.    Also during the COVID shutdown, Witness G contacted Complainant to tell them that Witness G was now involved with Doe. Complainant told her that it was fine by them and they thought Witness G and Doe were better suited for each other than he and Complainant had been anyway.

16.    In April 2020, Complainant texted Witness G about another of their ex-boyfriends, (identified in the underlying Title IX investigation as Witness F), who Complainant had previously alleged had been abusive to them. In the subsequent text conversation, Complainant and Doe's relationship came up within the context of tumultuous relationships. Following this exchange, Witness G sent Complainant a Ted Talk she had watched about problematic interpersonal relationships. Witness G texted to Complainant:

COMPLAINT FOR DAMAGES -                                  4

i want you to know i am NOT saying you and [Doe] were in an abusive relationship.

Complainant responded to Witness G:

Ahahahaha I know […]
It just wasn't healthy
On both ends

17.     Complainant did not return to Whitman until Spring 2021, at which time they and Doe saw each other for a friendly walk to catch up and chat.

18.     During that Spring of 2021 Complainant disclosed to Doe that they had bipolar disorder and apologized for the ups and downs of their tumultuous romantic relationship during freshman year (first semester, 2019).

19.     Later in Spring 2021 Complainant called Witness G a "fucking bitch" for having been intimate with Doe despite their friendship. This was in stark contrast to the previous conversation during which Complainant had told Witness G that she was free to date Doe.

20.     Complainant ultimately decided to withdraw from Whitman part way through the Spring 2021 semester, and invited Doe to her room to say goodbye. Nobody else was in the room when Doe arrived and Complainant was very flirtatious, but nothing romantic or sexual took place because Doe had a girlfriend in Seattle.

21.     In September 2021, after months of no contact between Complainant and Doe, Complainant called Doe out of the blue to apologize again for treating him badly while they were dating. The conversation ended amicably.

22.     Around this time Complainant also texted Witness I to apologize for treating him badly during freshman year when they falsely accused him of sexual assault.

23.     Also in September 2021, someone anonymously contacted Doe's soccer coaches

COMPLAINT FOR DAMAGES -                         5

**Cedar Law PLLC**
113 Cherry Street
PMB 96563
Seattle, Washington 98104
Phone (206) 607-8277 • Fax (206) 237-9101

1  to report that he had abused his ex-girlfriend. Complainant was Doe's only ex-girlfriend at

2  Whitman and so he was perplexed at the allegation since there had been no abuse in their

3  relationship.

4      24.    On October 2, 2021, Doe called Complainant to tell her about the surprising

5  allegation and they assured him over the phone that he had never been abusive to them. They

6  texted him the next day to reiterate that he never abused them, providing:

7          It's fucked up and idk how this is being fabricated and spread [.]
   And I do want to clarify that I haven't talked about our relationship

8          to anyone at Whitman and when I did I never said you abused me or
   anything remotely like that [.] Whoever's doing this knows nothing

9          about me or you [.]

10      25.    Around this time, Complainant also called their former roommate (identified in

11  the underlying Title IX investigation as Witness A) to express curiosity and annoyance that

12  someone had filed a complaint with the soccer team on their behalf. They told Witness A that

13  they never thought of their relationship with Doe as abusive or nonconsensual but then had started

14  wondering if maybe the relationship actually had been worse than they remembered.

15      26.    Complainant called Witness A again a short time later – speaking quickly and

16  erratically – to tell Witness A that they were not taking their bipolar medication and had changed

17  their mind and decided that they *had* been abused by Doe. Witness A was concerned that

18  Complainant was experiencing a manic episode especially since they were making such serious

19  allegations that departed from their consistent position over the last two years about Doe.

20      27.    On October 6, 2021, Complainant surprised Doe with texts alleging that he had a

21  "consent nonconsent kink" (which Doe had never heard of before) and detailed for the first-time

22  allegations that he had forced them into aggressive oral sex.

23

24

COMPLAINT FOR DAMAGES -      6

**Cedar Law PLLC**
113 Cherry Street
PMB 96563
Seattle, Washington 98104
Phone (206) 607-8277 • Fax (206) 237-9101

28.     Shocked but not wanting to shut them down, Doe responded by text providing, "I don't remember this happening this way but I trust your perspective and I am really sorry for clearly hurting you." Doe was shocked by these new allegations which were coming two years after the end of their relationship. Doe asked Complainant if they could call and talk more about what Complainant was alleging, so that he could better understand where they were coming from.

29.     Doe and the Complainant spoke on the phone after exchanging these text messages. During this phone call, it became apparent to Doe that Complainant was not being truthful regarding her allegations of abuse given the outrageous claims she was making years after their relationship had ended.

30.     On November 20, 2021, Complainant publicly posted on their Instagram story visible to hundreds of Whitman students a photo that Witness G had taken of Doe in Witness G's room with the caption:

> this man r@ped me until I developed stockholm syndrome - the sexual abuse continued throughout the relationship.

31.     The response by Doe's classmates to this very public allegation by Complainant at Whitman was humiliating and intense. Doe was severely emotionally affected by these very public allegations. He lost ten pounds and experienced intense back and shoulder pain from hours spent laying in bed as a result of depression. He continued to experience significant anxiety including intermittent panic attacks. Ultimately, Doe was forced to change his living situation as a result of the allegations.

32.     On November 23, 2021, Doe retained counsel to send Complainant a cease-and-desist letter. His attorney spoke to Complainant on Facetime and by text during which time

COMPLAINT FOR DAMAGES -                          7

**Cedar Law PLLC**
113 Cherry Street
PMB 96563
Seattle, Washington 98104
Phone (206) 607-8277 • Fax (206) 237-9101

Complainant again expressed that they did not believe that Doe had ever intentionally abused them but that their relationship was "toxic."

33.     Despite Doe's attorney's efforts, Complainant refused to engage in a mutual no contact agreement with Doe.

34.     On December 3, 2021, Complainant publicly posted excerpts of their texts with Doe including allegations of sexual assault and the statement "your lawyers don't scare me and neither do you".

35.     In April 2022, Complainant filed a police report with the Walla Walla Police Department (WWPD) alleging that Doe had sexually assaulted them and Doe submitted a statement to the WWPD. After completing their investigation, the police took no action.

36.     In May 2022, Complainant filed a Title IX complaint with Whitman, which resulted in a multi-month investigation over the summer and fall and a hearing in January 2023.

37.     During the investigation, Complainant introduced a student at Whitman (identified in the underlying Title IX investigation as Witness C), who had one intimate encounter with Doe in January 2020.  This encounter followed multiple text messages between Doe and Witness C discussing their mutual desire to "hook up" with each other. After their encounter, Witness C had asked Doe if she could see him again and Doe had declined, stating that he didn't want anyone to know about the encounter. Over one year later, Witness C claimed that they had changed their understanding of the encounter, which they had believed originally to be consensual, and now characterized as nonconsensual. Witness C connected with Complainant over the internet in November 2021 based on their alleged, claims about Doe.

38.     According to their text messages introduced as evidence at hearing, Complainant provided to Witness C:

**Cedar Law PLLC**
113 Cherry Street
PMB 96563
Seattle, Washington 98104
Phone (206) 607-8277 • Fax (206) 237-9101

He fucked with my future so now I'm going to do my best to fuck with his. I literally don't have anything going for me right now and he has everything going.

39.     Doe asked that Witness C be excluded on relevance grounds since she was not bringing her own Title IX complaint and her encounter was unrelated to his relationship with Complainant. The investigator refused, explaining that the allegation by Witness C – which had been expressly coordinated by Complainant – could reveal a pattern and practice of Doe's behavior.

40.     Doe then asked if he could introduce other witnesses with whom he had had positive and consensual sexual encounters to refute the alleges pattern and practice. The investigator refused to give those witnesses similar consideration.

41.     During the investigation, Doe recommended a number of witnesses that could corroborate his version of events. Despite a policy requiring the investigator to interview all "all available, relevant witnesses," the investigator refused to interview two proposed witnesses – Rolan Panza and Riley Kraft.

42.     If interviewed, Rolan Panza would have spoken about Complainant's history of publicly accusing men of nonconsensual sexual interactions with other people (i.e. not with the Complainant) without evidence, something he was a victim of. Riley Kraft would have spoken about his memory of the allegations outside of the party. Witness D specifically referenced him being there.

43.     As part of the investigation, the investigator interviewed Witness G. Her statement was recorded, and a transcript was provided to Witness G to review. Although Witness G originally approved the transcript, after reviewing the transcript for a second time, Witness G was "unhappy with how it looked. [She] wanted to clarify some things but was unsure if it was too

COMPLAINT FOR DAMAGES -                    9

**Cedar Law PLLC**
113 Cherry Street
PMB 96563
Seattle, Washington 98104
Phone (206) 607-8277 • Fax (206) 237-9101

late to do so or not…" prompting her to speak with Plaintiff's advocate.

44.    On September 29, 2022, Witness G emailed the investigator to "clarify" two statements and add one more.

45.    The investigator completed her draft report on November 11, 2022, and Respondent was disheartened to learn that she had not interviewed witnesses he had suggested that could have exonerated him, that her report presented the witnesses out of order in a way that appeared designed to prove Complainant's allegations as opposed to providing neutral fact-finding, omitting or ignoring inconsistent testimony that undermined the Complainant's allegations, that the investigator had engaged in credibility determinations despite Whitman policy to the contrary, and that the report generally appeared biased in favor of the Complainant.

46.    Although the Whitman Title IX Policy dictates that the process is meant to be resolved within 90 days, this did not occur.

47.    Although the report and related exhibits numbered in the hundreds of pages had taken several months to complete, when the ten-business-day timeframe to respond occurred over Thanksgiving Break 2022, the investigator denied Doe's request for additional days to prepare his final response to the report.

48.    Doe submitted a 37-page response to the draft investigation report on November 30, 2022.

49.    One of the primary concerns raised Doe in his 37-page response was Complainant's scattered and inconsistent allegations against him. The allegations were confusing such that Doe could not actually tell which encounters they were alleging were nonconsensual. Examples of this, which were set forth in Doe's November 30, 2022, response to the investigator's draft report, include:

COMPLAINT FOR DAMAGES -                    10

a)     Complainant provided the following confusing, inconsistent and contradictory statement to the investigator regarding the issue of consent:

> But he sort of, the way he like had his hands on my neck, very gently. **And I said to him like, "You're doing the things that I like." So I was like, "We shouldn't have sex." I was like, "And you're doing the doing things that I like." So I felt very turned on or whatever.** But I turned around to push him off and a little bit. And then because this part was ... this was all fine. This was all consensual. But I remember when I turned around, he said, "Well, you're doing things I like too."

b)     While Doe acknowledged that he had put his hand on Complainant's neck during sex, and although he denied (and denies) engaging in any choking, even if it occurred Complainant confirmed to the Investigator that they were okay with **"a normal amount"** of choking.

c)     Complainant stated the following with respect to consensual sex, as well as the "game" they perceived colored their sexual relations with Doe:

> **I think times that it was 100% consensual. I didn't say no.** That would be, I feel like the number one. I think that he ... yeah, I really think that's what it was. It was that I didn't say no. **We still had a little bit of that, like I don't know, the game or whatever. There was definitely still a little bit of that,** but I would say that it probably wasn't as, "No, I don't want to do that." It was more of just like, oh, you know what I mean? I feel like there's I was like ... It's really hard to explain. I don't know. I guess it was ...

d)     Complainant's following statements also shows that there was a relationship of unclear "lines" because Complainant would represent that they did not want to have sex when in fact they did want to have sex:

> **No. If I wanted to have sex, we didn't have sex.** That was not part of it. In fact, I think it was the fact that I wanted to have sex that meant that we weren't going to have it. **I'd pretend like I didn't if I wanted to. It was really a lot.**

e)     Similarly, Complainant stated:

**Cedar Law PLLC**
113 Cherry Street
PMB 96563
Seattle, Washington 98104
Phone (206) 607-8277 • Fax (206) 237-9101

Yeah. He would say things that made me really uncomfortable a lot in the beginning and more towards the beginning. Just stuff like, "You made me do this. If you weren't wearing that skirt, like I have to punish you," stuff like that. I don't know. I always was like, "Ooh." That vibe of "with you looking like that, of course, I'm going to do this to you. You were asking for it." It was hard. Even when it was consensual, it was so he made it like it wasn't. **Even those times, I remember him saying all that and I was like, "This is so weird because I want to be having sex with you and you're making it like I'm not."** You know what I mean? That was being really uncomfortable.

f)    Complainant's statements also demonstrated that Doe is and was mindful of if and when a sexual partner (here, Complainant) would have the capacity to consent to sex, and would not and will not engage in non-consensual sex:

Oh, there's something that I should tell you on my end that happened. **There was this one time that I was really, really drunk and we were going home together and he said that he wasn't going to sleep with me. And then I got really mad and...** I don't remember. **I think I yelled at him or something about how I was angry at him. And that was really bad of me, and I'm not saying that wasn't.**

50.    In addition to the above inconsistencies, Doe identified the following flaws with the investigative report:

- It failed to include corroborating evidence about respondent's positive sexual relations with others and/or it included allegations regarding Respondent's relations with Witness C.
- It failed to consider evidence About complainant's motivation to attack respondent, including the intent to "Fuck With" Respondent's future,
- It failed to consider evidence about complainant's mental health,
- It failed to consider complainant's admission that Doe never physically threatened or coerced them, but instead the only "Coercion" cited to is that Doe would simply find someone else to have sex with,
- It failed to allow expert witness opinion about complainant's contentions.
- It specifically included credibility considerations in violation of Whitman's policy.

COMPLAINT FOR DAMAGES -                12

51.     Despite the extensive response being timely provided to the investigator, she did not revise her report responsive to the issues raised in Doe's response – other than one or two minor changes to footnotes – and finalized her report on December 15, 2022.

52.     The Report contained a number of conclusions that were simply not supported by the evidence. For example, the report stated "As detailed in Section VIII above, witnesses corroborated: (a) seeing a bruise or mark on Complainant's face or neck; (b) Complainant talking to them about a bruise or mark; and (c) Complainant telling them about nonconsensual activity with Respondent." This blanket statement regarding corroboration ignored the fact that each witness testified to different events occurring, that often times contradicted each other.

53.     For example, Witness C never corroborated seeing a bruise on Complainants face, only her neck. However, the Complainant does not remember ever having a bruise on her neck.

54.      Witness D only testified to seeing Doe grabbing Complainant's arm at a party, which no other witnesses corroborated. This error is compounded by the fact investigator failed to follow up with the only other witness to the event that Witness D named: Riley Kraft.

55.     Witness F stated that Complainant told him that Doe hit them "all the time," yet Complainant specifically told the Investigator that Witness F's account was inaccurate. Witness F even stated that he asked Complainant if they had a bruise, and recalls that they indicated there wasn't ever one.

56.     Other witnesses explicitly did not corroborate the allegations – including Witnesses A and G.

57.     On December 20, 2022, at a time when Doe had told the Whitman Title IX Coordinator that he would be out of the country, the Coordinator circulated a Doodle Poll offering hearing dates on January 6, February 10, and March 3. Before Doe could respond to the poll, the

COMPLAINT FOR DAMAGES -                    13

Cedar Law PLLC
113 Cherry Street
PMB 96563
Seattle, Washington 98104
Phone (206) 607-8277 • Fax (206) 237-9101

1  Whitman Title IX Coordinator unilaterally assigned the hearing to January 9, 2023, when Doe

2  would be out of the country, as he had previously informed the coordinator.

3       58.    When Doe contacted the Whitman Title IX Coordinator to request the February or

4  March dates offered, she explained that Complainant had reported they would be out of the

5  country without internet access, and therefore were only able to participate in January. The Title

6  IX Coordinator said that due to this, the hearing had to take place in January. The Whitman Title

7  IX Coordinator unilaterally set a rescheduled hearing for January 20, 2023.  As more fully

8  explained below, this placed an undue hardship on Doe and impacted his ability to prepare for the

9  hearing.

10      59.    In a pre-hearing meeting with the Hearing Coordinator on January 17, 2023, Doe

11  was informed that they would be prohibited from asking any questions related to the

12  Complainant's mental health history as the decision-makers did not believe that Complainant's

13  mental health was relevant to the underlying allegations. No other specific reasons for denying

14  this important avenue of investigation were provided.

15      60.    When Doe argued that Complainant's self-described unmedicated bipolar disorder

16  was central to their credibility and explained the inconsistencies of the allegations over the years,

17  they were told to raise the issue on appeal if they did not agree with the result of the hearing.

18      61.    The Complainant plainly put their own mental health at issue by alleging Doe had

19  given them "Stockholm Syndrome," which was their explanation for why they continued to

20  engage in sexual activities with Doe for months.

21      62.    The hearing took place on January 20, 2023, during the first week back of the

22  second semester. Doe missed the first week of class preparing for the hearing.  Furthermore, Doe

23  – who is pursuing a double major – had a written senior exam for one of his fields of study on

24

**Cedar Law PLLC**
113 Cherry Street
PMB 96563
Seattle, Washington 98104
Phone (206) 607-8277 • Fax (206) 237-9101

January 28, 2023, and an oral exam on February 1, 2023, and important deadlines for his thesis for his other field of study. This scheduling concern had been shared much earlier with the Title IX Coordinator during the original discussions as rationale for Doe's request for the hearing to be scheduled later in February or March. At that time, the Title IX Coordinator had assured Doe that the hearing would be scheduled after his exams. The subsequent reversal in the schedule impacted Doe's ability to prepare for the hearing and to participate in his education.

63.     During the hearing, it came to light that the hearing chair, Joe Vincent, knew and had actually trained Trish Murphy, the investigator, regarding Title IX. Their prior relationship was not disclosed prior to the hearing.

64.     On February 13, 2023, Whitman College issued its "official notice" regarding the formal hearing finding Doe guilty of "dating violence" and "forcible rape" and recommending expulsion from Whitman College as the sanction just weeks before he completed his undergraduate degree.

65.     The "forcible rape" finding was based not on an actual incident of nonconsensual sexual contact but because "*Complainant said that [they] relented to [Doe's] frequent advances*" since Doe asked if Complainant was ready to engage in sexual intercourse multiple times over the first few weeks of their relationship before they had taken that step and "[Doe's] verbal pressure constituted coercion as defined by Whitman College policy" and "consent is invalidated by the application of force, and [so] Respondent used coercive force to engage in sexual penetration of Complainant."

66.     The report explicitly relied on Witness C's account of her own encounter with Doe as evidence against him, although in a response to Doe's appeal the Hearing Panel concluded that

Cedar Law PLLC
113 Cherry Street
PMB 96563
Seattle, Washington 98104
Phone (206) 607-8277 • Fax (206) 237-9101

Witness C's and Doe's encounter was consensual.[2]  Furthermore, the Hearing Panel made a determination that "Witness G's original statements were credible and relevant, and that Witness G's revised and retracted statement was not credible," despite Witness G's unequivocal retraction of her prior statement.

67.    Despite Complainant's reported unavailability that persuaded the Title IX Coordinator to push for an expedited hearing and in disregard for the nonpublication agreement that the parties were required to enter into to maintain confidentiality of proceedings, Complainant took to social media on February 25th to publish an excerpt from the confidential report and to taunt Doe and the witnesses who had supported him providing:

> got my abuser expelled from college
>
> a big f you to
> everybody who
> supported him you
> should all feel very
> embarrassed.

68.    Complainant took to social media again on February 27th to once again call out the witnesses who had supported Doe.

69.    On February 23, 2023, Doe appealed the findings and sanction based on four procedural irregularities per the limited grounds for appeal set forth under the College's Title IX policy:

> (1)    Prohibiting Respondent from introducing evidence of and asking questions of Complainant's mental health during the relevant time period even though their self-described unmedicated bipolar disorder informs the credibility of the allegations;

---

[2] In a verbal somersault to avoid exonerating Doe's interaction with Witness C, the clearly biased panel used the double negative "not unwelcome" in an apparent acknowledgment of consent between Doe and Witness C.

Cedar Law PLLC
113 Cherry Street
PMB 96563
Seattle, Washington 98104
Phone (206) 607-8277 • Fax (206) 237-9101

(2)    Relying upon Witness G's recanted statements while rejecting Witness G's corrective and clarifying statement and information;

(3)    Relying upon Witness C's alleged negative sexual encounter with Respondent while barring from consideration Witness G's evidence of past positive sexual encounters with Respondent; and

(4)    Accepting and adopting the investigator's procedurally improper conclusions and recommendations in arriving at their Title IX Finding.

70.    The Appeal included two sworn statements from Witness A and Witness G who emphatically disagreed with the decision.

71.    Witness A explained her concerns about bias within the process and her initial fear to testify honestly given the threat of retaliation by Complainant:

Because of my significant background and experiences with [Complainant] and [Doe] at Whitman, I agreed to be interviewed on September 16, 2022 as part of an investigation that Whitman was conducting because of [Complainant's] allegations against [Doe] of nonconsensual sex.

Although I agreed to be interviewed, I was anxious to be more involved because of the accusations [Complainant] posted against [Doe] on social media, and also because of [Complainant's] indirect post which was pretty clearly threatening me and anyone who spoke out against [their] false accusations against [Complainant].

So I limited my involvement in the Title IX process because of that. I also didn't want to speak badly about [Complainant] since the investigator told me they would be able to see the transcript. After my interview, I felt that the investigator asked me somewhat biased questions that seems to have the goal of trying to find [Doe] responsible for what [Complainant] accused him of but didn't ask some really crucial questions that could show he was innocent.

I did not want to testify at the hearing, but now that I've heard how the Title IX hearing played out, I feel that I have new information that the panel should consider and feel compelled to provide that information about my experiences and observations with [Complainant] […]

COMPLAINT FOR DAMAGES -                    17

I am shocked to hear that [Complainant] is now blaming [Doe] for why they dropped out of Whitman because [Complainant] simply did not attend class and that is why they failed. [Doe] and I had even brainstormed strategies to help them because they were clearly going to fail out of school […]

I feel very strongly that [Complainant] has rewritten history and made false allegations about [Doe]. It's devastating that he is facing expulsion because of this. Even if [Complainant] seems to believe what they are saying, I think it's important for the school to look at these allegations through a mental health lens and realize that this person is simply not telling the truth.

72.     Witness G likewise expressed frustration that her recanted testimony had been relied on and misconstrued by the hearing panel despite her unequivocal belief that Complainant was lying:

I was very frustrated to learn that the investigator did not let me recant the part of my interview that made it sound like [Doe] was somehow accepting blame for [Complainant's] allegations. He was just trying to be thoughtful and reflective because he is a good person who has been accused of some terrible things.

I really cannot overstate how strongly I feel that these allegations are not true, that [Doe] did not engage in the behavior he's been accused of, and that [Complainant] has recently made up these allegations after years of saying [Doe] did not do anything of this kind.

I sincerely hope that the University will allow me to recant any part of my interview that implicated [Doe] as guilty. I feel that my statement was misconstrued and it is entirely inaccurate to rely on my testimony for any purpose but to exonerate [Doe] from these false allegations.

73.     Nevertheless, the Appeals Panel refused to consider the effect of the Hearing Panel (1) prohibiting Doe from introducing evidence of and asking questions of Complainant's mental health; or (3) relying upon Witness C's alleged negative sexual encounter with Respondent while barring from consideration Witness G's evidence of past positive sexual encounters with Doe,

COMPLAINT FOR DAMAGES -                     18

even though in response to Doe's appeal the Hearing Panel concluded Witness C's and Doe's relationship was consensual.

74.    On March 22, 2023, the appeals panel issued its decision regarding issues (2) and (4) and upheld the findings and sanction.

75.    On March 22, 2023, Complainant contacted Witness G by text to gloat:

> I think my favorite part of the entire process was
> when they referred to you as the most "persuasive
> witness" in my favor. Thank you much :))

76.    As a result of the upheld sanction, Doe was expelled from Whitman College and unable to return to complete the seven weeks remaining until his degree was conferred.

**B.    External and Internal Pressure Has Created a Gender Bias Against Male Students Accused of Sexual Misconduct at Whitman**

76.    The College, in recent years, faces tremendous pressure to overzealously prosecute alleged Title IX violations on campus, even in situations where the evidence does not support a finding that a violation occurred.

77.    In 2011, the Department of Education issued its famous "Dear Colleague Letter," ("DCL"). The DCL advised recipients that sexual violence constitutes sexual harassment within the meaning of Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 et seq. and its regulations, and directed schools to "take immediate action to eliminate the harassment, prevent its recurrence and address its effects." DCL at p. 4.

78.    On April 29, 2014, OCR issued additional directives to colleges and universities in the form of a guidance document titled *Questions and Answers on Title IX and Sexual Violence* ("Q&A") which was aimed at addressing campus sexual misconduct policies, including the procedures colleges and universities "must" employ "to prevent sexual violence and resolve

COMPLAINT FOR DAMAGES -                    19

complaints" and the elements that "should be included in a school's procedures for responding to complaints of sexual violence." Q&A, at p. 12. The Q&A advised schools to adopt a trauma informed approach, advising, for example, that hearings should be "conducted in a manner that does not inflict additional trauma on the complainant." Id. at p. 31. While the Q&A advised that "the rights established under Title IX must be interpreted consistently with any federally guaranteed due process rights…a school should ensure that any due process rights do not restrict or unnecessarily delay the protections provided by Title IX to the complainant." Id. at p. 13

79.    In April 2014, the White House issued a report entitled "Not Alone", which included a warning that if the OCR finds that a Title IX violation occurred, the "school risks losing federal funds" and that the Department of Justice ("DOJ") shares authority with OCR for enforcing Title IX and may initiate an investigation or compliance review of schools. Further, if a voluntary resolution cannot be reached, the DOJ may initiate litigation.

80.    In June 2014, then Assistant Secretary of Education Catherine Lhamon testified before the United States Senate that if OCR could not secure voluntary compliance with the DCL from a college or university, it may elect to initiate an administrative action to terminate federal funds or refer the case to the Department of Justice.

81.    The 2011 DCL was formally rescinded in 2017, under the Trump Administration. However, for many colleges, including Whitman, the 2011 DCL and related guidance continues to drive their Title IX enforcement mechanisms. New Title IX regulations were promulgated in 2020.

82.    In March of 2021, President Biden signed an executive order on "Guaranteeing an Educational Environment Free from Discrimination on the Basis of Sex, Including Sexual Orientation or Gender Identity" which directed the Secretary of Education to review all current

COMPLAINT FOR DAMAGES -                    20

regulations and guidance on Title IX, and specifically directed the Secretary to review the new 2020 regulations.

83.     In June 2022, the Biden Administration proposed new Title IX regulations.

84.     Numerous past and present students and employees of Whitman, including professors, administrators, and coaches, perceive an inherent and systematic gender bias against male students accused of sexual misconduct at Whitman, which prevents male students from a receiving fair and impartial hearing when a complaint of sexual assault is made against them by a female student.

85.     Whitman, through its actions and inactions, promotes an atmosphere of bias against male students accused of sexual misconduct, including the common notion that any male athlete accused of sexual misconduct will be found responsible and thrown out of school. For example, in her article "Beer Goggles, Munchies and Title IX violations" Whitman student Natalie Comerford describes the College's freshman orientation regarding consent as "*boys, please don't sexually assault people.*" (emphasis added).

86.     Conversely, many male students at Whitman are afraid and unwilling to report incidents of sexual abuse by female perpetrators due to the perceived bias against males in the Title IX process.

87.     The overwhelming majority of Title IX cases at Whitman involve female complainants and male respondents.  The College's 2019-2020 Title IX report indicates that 80% of claimants, whose gender is known, identify as female. However, the report does not separately breakdown the status or outcomes of investigations by gender.

88.     Upon information and belief, even when a male complainant raises a complaint against a female respondent, Whitman is less likely to find a female respondent liable for

COMPLAINT FOR DAMAGES -                    21

Cedar Law PLLC
113 Cherry Street
PMB 96563
Seattle, Washington 98104
Phone (206) 607-8277 • Fax (206) 237-9101

1    misconduct, regardless of the level of evidence against them.

2          89.    Upon information and belief, Whitman is in possession of records indicating its

3    own gender bias in Title IX proceedings.

4          90.    Since September of 2019, *The Whitman Wire,* Whitman's student newspaper, has

5    published eight articles regarding Title IX. None of the articles were supportive of the College's

6    response to sexual assault on campus, with many of them challenging the College to do more.

7    Article headlines include "Let's Talk about Whitman's Treatment of Sexual Assault," "Whitman

8    Didn't Count You in the Security Report? Me too," "Whitman College Blatantly Ignores Student

9    Safety in Annual Security Report," "Title IX: Survivors Deserve Better," and "Beer Goggles,

10   Munchies, and Title IX Violations."

11         91.    In the article "Whitman didn't count you in the security report? Me too," published

12   in October of 2021, the author admonishes the College for not expelling a male student who

13   admitted to raping her. The article prompted a public statement by the College's President. Since

14   the publishing of that, and many other articles critical of the College's Title IX process, the

15   College has taken drastic and discriminatory steps against male respondents.

16         92.    Internal pressure in this matter also came directly from the Complainant, who in a

17   series of emails to the College, threated to sue the College for "negligence" because it was not

18   doing enough to protect women. In the email, Complainant writes "I have never seen Whitman

19   handle a Title IX case appropriately and quite frankly it's embarrassing for a school who claims

20   to care about women's safety." Further, the Complainant stated, "for the sake of women and

21   victims attending your school, please get your shit together." When the Complainant did not

22   receive the answer they were looking for, Complainant responded "I'm planning on suing you

23   should you continue your vow of silence. It's clear you're all incapable of holding yourselves

24

**Cedar Law PLLC**
113 Cherry Street
PMB 96563
Seattle, Washington 98104
Phone (206) 607-8277 • Fax (206) 237-9101

1    accountable so somebody has to."

2    93.    In 2014, Whitman was the subject a Title IX investigation by the Department of

3    Education's Office for Civil Rights that received significant notoriety, including an article in the

4    Seattle Times.[3]

5    94.    The foregoing combination of internal institutional pressure, ongoing threat of

6    OCR investigations, and pressure from the United States Department of Education, under a threat

7    of recession of federal funds, contributed to an overzealous prosecution and erroneous finding of

8    responsibility against Plaintiff based on his gender identity.

9    ## V.    CAUSES OF ACTION

10    ### FIRST CAUSE OF ACTION
11    ### Violation of Title IX of the Education Amendments of 1972

12    95.    Title IX of the Education Amendments of 1972 ("Title IX") provides, in relevant

13    part, that: "No person in the United States shall, on the basis of sex, be excluded from participation

14    in, be denied the benefits of, or be subjected to discrimination under any education program or

15    activity receiving Federal financial assistance."

16    96.    Title IX applies to all public and private educational institutions that receive

17    federal funding, which includes Whitman College.

18    97.    Both the Department of Education and the Department of Justice have

19    promulgated regulations under Title IX that require a school to "adopt and publish grievance

20    procedures providing for the prompt and equitable resolution of student... complaints alleging any

21    action which would be prohibited by" Title IX or regulations thereunder. 34 C.F.R. § 106.8(b)

22

23    ---

[3] https://www.seattletimes.com/seattle-news/civil-rights-office-confirms-inquiry-at-whitman-college/

24

COMPLAINT FOR DAMAGES -    23

1    (Dep't of Education); 28 C.F.R. § 54.135(b) (Dep't of Justice) (emphasis added).

2         98.    Title IX may be violated by a school's failure to prevent or remedy sexual

3    harassment or sexual assault or by the imposition of university discipline where gender is a

4    motivating factor in the decision to discipline. In either case, the statute is enforceable through an

5    implied private right of action.

6         99.    Challenges to university disciplinary proceedings for sex discrimination turn on

7    whether the alleged facts, if true, raise a plausible inference that the university discriminated

8    against the plaintiff on the basis of sex. However, sex discrimination need not be the only

9    plausible explanation or even the most plausible explanation for a Title IX claim to proceed.

10   Courts look to the external and internal pressures on institutions regarding Title IX, as well as

11   specific procedural irregularities in determining whether a violation of Title IX occurred.

12        100.   As alleged in paragraphs 64-80, the College faces extreme external pressure to

13   overzealously prosecute Title IX violations, in part out of fear of losing federal funding. Similarly,

14   the College also faces pressure from its own community, as evidenced by the numerous articles

15   in the school newspaper, to do more to address Title IX issues on campus.

16        101.   The combination of these pressures has created a bias against male respondents in

17   the Title IX process that is evident to members of the community.

18        102.   As a result of these external and internal pressures, and the general bias against

19   male respondents, the College failed to provide Doe with a fair process under Title IX.

20        103.   The Title IX process employed against Doe suffered from serious procedural

21   irregularities that occurred because of Doe's gender. These irregularities include:

22        a.    Relying on "pattern of conduct" evidence against Doe but prohibiting Doe from
              introducing rebuttal "pattern of conduct" evidence.

23

24

COMPLAINT FOR DAMAGES -                    24

**Cedar Law PLLC**
113 Cherry Street
PMB 96563
Seattle, Washington 98104
Phone (206) 607-8277 • Fax (206) 237-9101

b. Refusing Doe's request to allow his advocate to question the complainant about their changing mental health, despite complainant referring to their mental health both to the investigator and during the hearing.

c. Relying on retracted statements by Witness G, and discrediting her actual, corrected statements.

d. Allowing the investigator to reach conclusions regarding the investigation, in contravention of College policy.

e. Refusing to allow expert testimony regarding complainant's mental health.

f. Failure to interview witnesses identified by Doe that would have provided exculpatory evidence.

104. All these procedural irregularities were to the benefit of complainant, who was assigned female at birth, and to the detriment of respondent, who is male.

105. This unlawful discrimination in violation of Title IX proximately caused Plaintiff to sustain substantial injury, damage, and loss, including, without limitation, reputational damage, emotional distress, psychological damages, loss of educational and career opportunities, economic injuries and other direct and consequential damages.

106. As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## SECOND CAUSE OF ACTION
### Breach of Contract

107. The relationship between a college and its students is primarily contractual in nature, with the specific terms of the contract often delineated in the Student Handbooks and other publications.

108. The relationship between Doe and College was contractual in nature. As part of that contract, the College made certain promises regarding how it handled Title IX investigations.

**Cedar Law PLLC**
113 Cherry Street
PMB 96563
Seattle, Washington 98104
Phone (206) 607-8277 • Fax (206) 237-9101

109.    Those promises are contained in the Student Handbook, specifically within the "Student Rights and Responsibilities" section, as well as the College's standalone Sexual Harassment, Discrimination, and Sexual Misconduct Policy and Procedure.

110.    Among other things, the College promised that:

the college has developed internal policies and procedures that provide a prompt, fair, and impartial process for those involved in an allegation of sexual harassment, sexual misconduct or retaliation that reflect college policy and are in compliance with the 2020 Title IX Regulations. Whitman values and upholds the equal dignity of all members of its community and strives to balance the rights of the parties in the grievance process during what is often a difficult time for all those involved.

111.    The College further promised a series of procedural rights that are afforded to respondents in Title IX proceedings, including:

- "All parties have a full and fair opportunity, through the investigation process, to suggest witnesses and questions, to provide evidence and expert witnesses, and to fully review and respond to all evidence on the record."

- The right to a "thorough, reliable, and impartial investigation"

- The right to have "all available, relevant witness" be interviewed

- The right to review the draft investigative report, and make comments, to which the investigator "will incorporate relevant elements of the parties' written responses into the final investigation report…"

- Limiting the investigator's role to "gather, assess, and synthesize evidence, but make no conclusions, engage in no policy analysis, and render no recommendations as part of their report."

112.    The College breached its contract with the Plaintiff by failing to provide a fair, thorough, reliable, and impartial Title IX process.

113.    The College further breached its contract with the Plaintiff by failing to provide the above bulleted procedural protections to Doe.

COMPLAINT FOR DAMAGES -                    26

114.    The breach of this contract proximately caused Plaintiff to sustain substantial injury, damage, and loss, including, without limitation, reputational damage, emotional distress, psychological damages, loss of educational and career opportunities, economic injuries and other direct and consequential damages.

115.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

### THIRD CAUSE OF ACTION
### <u>Violation of the Covenant of Good Faith and Fair Dealing</u>

116.    Under Washington law, "[t]here is in every contract an implied duty of good faith and fair dealing" that "obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." *Badgett v. Sec. State Bank*, 116 Wash.2d 563, 569, 807 P.2d 356 (1991).

117.    In particular, the duty of good faith and fair dealing arises "when the contract gives one party discretionary authority to determine a contract term." *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc*., 86 Wn. App. 732, 738, 935 P.2d 628 (1997). "[G]ood faith limits the authority of a party retaining discretion to interpret contract terms; it does not provide a blank check for that party to define terms however it chooses. *Rekhter v. State*, 180 Wn. 2d 102, 113 (2014)(quoting *Scribner v. Worldcom, Inc*., 249 F.3d 902, 910 (9th Cir. 2001)). It is possible to breach the covenant of good faith and fair dealing, even if all of the specific contractual terms of fulfilled. *Rekhter*, 180 Wn. 2d at 111-112 ("As the Seventh Circuit has said, 'It is, of course, possible to breach the implied duty of good faith even while fulfilling all of the terms of the written contract'").

118.    The College violated the covenant of good faith and fair dealing by instituting a

**Cedar Law PLLC**
113 Cherry Street
PMB 96563
Seattle, Washington 98104
Phone (206) 607-8277 • Fax (206) 237-9101

1   biased process that denied Doe fundamental fairness.

2        119.    Furthermore, The College violated the covenant of good faith and fair dealing by

3   choosing to expel Doe given the facts of this case. The College possesses the discretion in

4   deciding what, if any, discipline is imposes following a Title IX hearing. As such, a duty to act in

5   good faith in applying that discretion arose.

6        120.    That discretion is supposed to be governed by eight non-exclusive factors, which

7   includes "any other information deemed relevant by the decision-maker(s).As such, the

8   Committee should have considered such mitigating factors as the inconsistency of Complainant's

9   testimony regarding which incidents were alleged to be nonconsensual, Complainant's delay in

10   raising their allegations, the fact that Complainant no longer attends Whitman for reasons

11   unrelated to the allegations, Doe's proximity to graduation, and the various procedural

12   irregularities identified above.

13        121.    In deciding to expel Doe for the conduct alleged, the College failed to consider

14   those eight factors, and instead focused only on the severity of the alleged incident.

15        122.    Having failed to constrain its discretion within the terms of its on Handbook, the

16   College violated the covenant of good faith and fair dealing.

17        123.    The breach of this covenant proximately caused Plaintiff to sustain substantial

18   injury, damage, and loss, including, without limitation, reputational damage, emotional distress,

19   psychological damages, loss of educational and career opportunities, economic injuries and other

20   direct and consequential damages.

21        124.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be

22   determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

23                   **FOURTH CAUSE OF ACTION**

24

COMPLAINT FOR DAMAGES -             28

**Cedar Law PLLC**
113 Cherry Street
PMB 96563
Seattle, Washington 98104
Phone (206) 607-8277 • Fax (206) 237-9101

## Violation of the Washington Consumer Protection Act RCW 19.86

125.    Defendant's actions violated the Washington Consumer Protection Act by engaging in a deceptive practice occurring in commerce.

126.    To plead a CPA claim, there must be (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) that impacts the public interest; (4) causes injury to the plaintiffs' business or property; and (5) causation. *Hangman Ridge Training Stables v. Safeco Title Ins*. Co, 105 Wn.2d 778, 780 (1986).

127.    Defendant deceptively promised to follow a series of procedural safeguards, and to provide a fair and unbiased process for resolving disciplinary issues.  Instead, the College willfully failure to comply with the Handbook provisions described in ¶ 98.

128.    In consideration for the promises made to the Plaintiff regarding the Title IX and disciplinary processes, Plaintiff enrolled in and paid approximately $140,000 in tuition  and room and board to the College.

129.     The violation of the CPA caused Plaintiff to sustain substantial injury, damage, and loss, including, without limitation, reputational damage, emotional distress, psychological damages, loss of educational and career opportunities, economic injuries and other direct and consequential damages.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court enter a judgment against the for the following:

1.  A permanent injunction requiring the College to rescind its expulsion of Doe and dismissal of the Title IX complaint against him,

**Cedar Law PLLC**
113 Cherry Street
PMB 96563
Seattle, Washington 98104
Phone (206) 607-8277 • Fax (206) 237-9101

2. For all general damages including but not limited to physical, mental, and emotional injury resulting from the acts complained herein;

3. Reasonably attorney's fees and expenses;

4. For such other and further relief allowed under the law or as this Honorable Court deems just and equitable.

DATED this 10th Day of April, 2023

CEDAR LAW PLLC

Lara Hruska, WSBA No. 46531
113 Cherry Street PMB 96563
Seattle, WA  98104
lara@cedarlawpllc.com
Attorney for Plaintiff

**<u>VERIFICATION</u>**

**Cedar Law PLLC**
113 Cherry Street
PMB 96563
Seattle, Washington 98104
Phone (206) 607-8277 • Fax (206) 237-9101

I, John Doe, declare as follows:

1. I am the Plaintiff in this matter.

2. I have personal knowledge of the events described in the foregoing Complaint, and if called upon to testify, I would competently testify as to the matters stated herein.

3. I verify, under penalty of perjury under the laws of Washington State, that the factual statements contained in the foregoing Complaint are true and correct to the best of my knowledge.


Signed on March 28, 2023 in Walla Walla, Washington


John Doe

COMPLAINT FOR DAMAGES -                    31

**Cedar Law PLLC**
113 Cherry Street
PMB 96563
Seattle, Washington 98104
Phone (206) 607-8277 • Fax (206) 237-9101