THE HONORABLE MARY K. DIMKE

LARA HRUSKA, WSBA No. 46531
ALEX HAGEL, WSBA NO. 55423
Cedar Law PLLC
113 Cherry Street, PMB 96563
SEATTLE, WA 98104-2205
T: (206) 607-8277
F: (206) 237-9101
E: lara@cedarlawpllc.com
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOHN DOE,<br><br>       Plaintiff,<br><br>vs.<br><br>THE BOARD OF TRUSTEES OF WHITMAN COLLEGE, A non-profit corporation<br><br>       Defendant. | Case No.: 4:23-cv-05051-MKD<br><br><br>MOTION FOR TEMPORARY RESTRAINING ORDER<br>4/24/2023<br>With Oral Argument 2:15 p.m.<br>Via Zoom |

**PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**- 1
CASE 4:23-cv-05051-MKD

**Cedar Law PLLC**
113 Cherry St., PMB 96563
Seattle, WA 98104
lara@cedarlawpllc.com
Tel 206.607.8277 • Fax
206.237.9101

## I. RELIEF REQUESTED

Plaintiff, pursuant to Rule 65 of the Federal Rules of Civil Procedure seeks a temporary restraining order preventing Defendant Whitman College ("Whitman"), from expelling him just weeks before his graduation based on a flawed investigation and hearing pertaining to events from 2019, which denied him substantive rights promised to him by Whitman and guaranteed under Title IX.

## II.     EVIDENCE RELIED UPON

The Plaintiff relies on the allegations raised in the verified complaint, ECF No. 1.1, the Declaration of John Doe attached to this motion, and the other papers and pleadings filed in this action.

## III. STATEMENT OF FACTS

Plaintiff John Doe ("Doe," he/him) and the complainant from the underlying Title IX proceeding ("Complainant," femme nonbinary they/them) met during the first week of freshman year and were romantically and sexually involved between September 2019 and December 2019, until Doe broke up with Complainant. *Complaint* ¶ 8. During that time, Doe and Complainant frequently engaged in consensual sexual activity. *Id*. In September 2021, someone anonymously contacted Doe's soccer coaches to report that he had abused his ex-girlfriend. *Complaint* ¶ 23. Complainant was Doe's only ex-girlfriend at Whitman and was perplexed at the

**PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**- 2
CASE 4:23-cv-05051-MKD

**Cedar Law PLLC**
113 Cherry St., PMB 96563
Seattle, WA 98104
lara@cedarlawpllc.com
Tel 206.607.8277 • Fax
206.237.9101

allegation since there had been no abuse in their relationship. *Id.* ¶ 23. On October 2, 2021, Doe called Complainant to tell her about the allegation and they assured him over the phone that he had never been abusive to them. *Id.* at ¶ 23. They later texted him to reiterate that he never abused them, providing:

> It's fucked up and idk how this is being fabricated and spread [.] And I do want to clarify that I haven't talked about our relationship to anyone at Whitman and when I did I never said you abused me or anything remotely like that [.] Whoever's doing this knows nothing about me or you [.]

*Id.* ¶ 24. Around this time, Complainant also called their former roommate (identified in the underlying Title IX investigation as Witness A) to express curiosity and annoyance that someone had filed a complaint with the soccer team on their behalf. *Id.* ¶ 25. They told Witness A that they never thought of their relationship with Doe as abusive or nonconsensual. *Id.* ¶25.

During what appears to have been a manic episode as a result of their unmedicated bipolar disorder, Complainant changed their mind as to the nature of their relationship with John Doe sometime later in October 2021 and alleged that John Doe had, in fact, abused them over the course of the relationship. *Id.* ¶ 26-29. On November 20, 2021, Complainant publicly posted on their Instagram story visible to hundreds of Whitman students a photo of Doe with the caption:

**PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**- 3
CASE 4:23-cv-05051-MKD

**Cedar Law PLLC**
113 Cherry St., PMB 96563
Seattle, WA 98104
lara@cedarlawpllc.com
Tel 206.607.8277 • Fax
206.237.9101

> this man r@ped me until I developed stockholm syndrome
> - the sexual abuse continued throughout the relationship.

*Id.* ¶ 30. The response by Doe's classmates within the highly politicized climate on campus regarding sexual assault to this very public allegation by Complainant at Whitman was humiliating and intense. *Id.* ¶ 31. Doe was severely emotionally affected by these very public allegations. *Id.* Doe lost ten pounds and experienced intense back and shoulder pain from hours spent lying in bed because of depression. *Id.* He continued to experience significant anxiety including intermittent panic attacks. Ultimately, Doe was forced to change his living situation as a result of the allegations. *Id.*

Complainant filed a police report in April 2022 which was investigated and ultimately not pursued as credible by the Walla Walla Police Department. *Id.* ¶ 35. Still upset, Complainant – who had not attended school at Whitman for over a year – filed a Title IX complaint in May 2022. *Id.* ¶ 36. Notably, Complainant explained to a witness in the proceedings that their intent for engaging in the Title IX process was simply to "to do my best to fuck with" [Doe's] future. *Id.* ¶ 38.

This kicked off a multi-month investigation, rife with bias and procedural errors as detailed in the complaint. *Id.* ¶ 37-62. For example, Doe was prohibited from raising Complainant's mental health history to the hearing panel and denied

**PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**- 4
CASE 4:23-cv-05051-MKD

**Cedar Law PLLC**
113 Cherry St., PMB 96563
Seattle, WA 98104
lara@cedarlawpllc.com
Tel 206.607.8277 • Fax
206.237.9101

the opportunity for this procedural error to be considered on appeal, despite Complainant specifically raising mental health as an issue. *Id.* ¶ 59, 72. The Title IX Hearing Investigator permitted an unrelated witness (Witness C), who had a one-time sexual encounter with Doe, to show a "pattern and practice" of abuse by Complainant but refused Doe's efforts to introduce a long-time partner as evidence of a "pattern of practice" of consent. *Id.* ¶ 37-40. Notably, the Whitman Hearing Panel went to great lengths to avoid exonerating Doe regarding his interactions with Witness C as consensual by referring to it in the double negative of "not unwelcome." *Id.* ¶ 65. This discriminatory bias was likewise rejected as an appealable issue by Whitman. *Id.* ¶ 72.

Not surprisingly, Whitman denied Doe's appeal and upheld its finding that he had engaged in "forcible rape." *Id.* ¶ 73. These findings were not based on an actual incident of nonconsensual sexual contact but because "Complainant said that [they] relented to [Doe's] frequent advances" since Doe asked if Complainant was ready to engage in sexual intercourse multiple times over the first few weeks of their relationship. *Id.* ¶ 64. The Hearing Panel concluded "[Doe's] verbal pressure constituted coercion as defined by Whitman College policy" and "consent is invalidated by the application of force, and [therefore] Respondent used coercive force to engage in sexual penetration of Complainant." *Id.*

**PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**- 5
CASE 4:23-cv-05051-MKD

**Cedar Law PLLC**
113 Cherry St., PMB 96563
Seattle, WA 98104
lara@cedarlawpllc.com
Tel 206.607.8277 • Fax
206.237.9101

As the sanction for Doe's offense of "forcible rape," Whitman recommended expulsion just seven weeks before Doe was set to graduate for the conclusory reason that forcible rape "relate[s] to some of the most egregious forms of conduct prohibited by Whitman College." *Declaration of John Doe* ("Doe Decl.") exhibit 3 at 13. The decision-makers did not take into account that Complainant is no longer on campus or that Doe could complete his final seven weeks of college off-campus after years of work.

## IV. NOTICE

Plaintiff gave notice via counsel to attorney for the Defendant in an email of his intent to seek a temporary restraining order enjoining Defendant from expelling him on March 27, 2023.

## V. ARGUMENT AND AUTHORITY

### A. Legal Standard.

Pursuant to Federal Rule of Civil Procedure 65, the Court may grant preliminary injunctive relief in order to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b)(1)(A). The standard for issuing a temporary restraining order is the same as the standard for issuing a preliminary injunction. *Florer v. Peck,* No. CV-05-5039-EFS, 2007 WL 9717447, at *2 (E.D. Wash. Oct. 10, 2007). To obtain this relief, a plaintiff must demonstrate: (1) a likelihood of success on the merits;

**PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**- 6
CASE 4:23-cv-05051-MKD

**Cedar Law PLLC**
113 Cherry St., PMB 96563
Seattle, WA 98104
lara@cedarlawpllc.com
Tel 206.607.8277 • Fax
206.237.9101

(2) a likelihood of irreparable injury in the absence of preliminary relief; (3) that a balancing of the hardships weighs in plaintiff's favor; and (4) that a preliminary injunction will advance the public interest. *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008); *M.R. v. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012). Under the *Winter* test, a plaintiff must satisfy each element for injunctive relief.

Alternatively, the Ninth Circuit also permits a "sliding scale" approach under which an injunction may be issued if there are "serious questions going to the merits" and "the balance of hardships tips sharply in the plaintiff's favor," assuming the plaintiff also satisfies the two other *Winter* factors. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) ("[A] stronger showing of one element may offset a weaker showing of another.").

## B.    Plaintiff is Likely to Succeed on the Merits of His Claim

### 1. Title IX

The Plaintiff is likely to succeed on his claim that Whitman violated his rights under Title IX because the College discriminated against him during the Title IX hearing process on the basis of sex. The Ninth Circuit recognizes a cause of action under Title IX when a college or university, who receives federal funds, imposes discipline where gender is a motivating factor in the discipline. *Schwake v. Arizona*

**Cedar Law PLLC**
113 Cherry St., PMB 96563
Seattle, WA 98104
lara@cedarlawpllc.com
Tel 206.607.8277 • Fax
206.237.9101

*Board of Regents,* 967 F.3d 940, 947 (9th Cir. 2020). The Ninth Circuit adopted a "far simpler standard" for Title IX claims in this context – "whether the alleged facts, if true, raise a plausible inference that the university discriminated against the plaintiff on the basis of sex?" *Schwake,* 967 F.3d at 947 (cleaned up) (citing *Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 854–55 (7th Cir. 2019)). Sex discrimination need not be the only plausible explanation or even the most plausible explanation for a Title IX claim to proceed. See *Doe v. Baum*, 903 F.3d 575, 586 (6th Cir. 2018).

Since *Schwake,* the Ninth Circuit has identified three broad categories of evidence that tend to support Title IX claims in this context – external pressure on the College regarding Title IX, internal patterns and practices of bias against male students, and allegations of specific instances of bias in the individual's case, including procedural irregularities. *See Doe v. Regents of University of California*, 23 F.4th 930, 936-940 (9th Cir. 2022).

Regarding external pressures on colleges and universities, courts have looked to government guidance surrounding Title IX, including the April 2011 "Dear Colleague Letter" from the Department of Education ("DOE") "directing schools to take 'immediate action' to eliminate sexual harassment," as well as statements made by executive branch officials regarding the consequences of violating Title IX. *Id.* Internal patterns involve the past and current practices of the college

**Cedar Law PLLC**
113 Cherry St., PMB 96563
Seattle, WA 98104
lara@cedarlawpllc.com
Tel 206.607.8277 • Fax
206.237.9101

regarding Title IX investigations, including the disparity between how male and female respondents are treated during the Title IX process. However, specific statistical allegations are not necessary at an early stage, because "[i]t may be difficult for a plaintiff to know the full extent of alleged discrimination in decision making before discovery allows a plaintiff to unearth information controlled by the defendant." *Schwake,* 967 F.3d at 949. Internal pressures may also include articles printed in college newspapers regarding the Title IX process. *Regents,* 23 F.4d at 938. Taken together, the external and internal pressures on the college are often referred to as "background indicia of sex discrimination." *Id.* at 939.

After considering the background indicia of sex discrimination, plaintiffs are required to "combine those allegations with facts particular to his case." *Id.* (citing *Schwake,* 967 F.3d at 949)(cleaned up). Courts, including the *Schwake* and *Regents* courts, look to whether the university's process included any procedural irregularities such as when "the university failed to consider the male accused's version of the alleged assault or to follow up with witnesses and evidence offered in his defense" (*Schwake,* 967 F.3d at 951), or when "the appeals board exclusively credited female testimony and rejected all male testimony." *Doe v. Baum*, 903 F.3d 575, 586 (Sixth Cir. 2018). As the court held in *Regents,* "at some point an accumulation of procedural irregularities all disfavoring a male respondent begins

**PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**- 9
CASE 4:23-cv-05051-MKD

**Cedar Law PLLC**
113 Cherry St., PMB 96563
Seattle, WA 98104
lara@cedarlawpllc.com
Tel 206.607.8277 • Fax
206.237.9101

to look like a biased proceeding despite the Regents' protests otherwise." *Regents,* 23 F.4d at 941.

The facts surrounding the investigation and hearing, as alleged in the complaint, are sufficient to show that sex was a motivating factor in expelling Plaintiff. Regarding the background indicia of sex discrimination, the verified complaint alleges that the 2011 Dear Colleague Letter, although technically rescinded, still informs the college's practice in conducting Title IX hearings, especially considering statements made by Department of Education officials. *Complaint ¶* 77-83. The complaint also alleges that the college's Title IX process discriminates against male students because it repeatedly finds male students responsible for violating Title IX regardless of the level of evidence available. *Complaint ¶* 86-88. Conversely, female students at Whitman are rarely determined to have violated Title IX, in part because males at Whitman are afraid to report allegations arising under Title IX, given the perceived bias against male students. *Id.*

The College also faces pressure from its community to do more to punish students suspected of violating Title IX. *The Whitman Wire,* Whitman's on campus newspaper, has run eight articles regarding Title IX between the time of Plaintiff's enrollment at Whitman in September of 2019 and his hearing in February of 2023.

**PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**- 10
CASE 4:23-cv-05051-MKD

**Cedar Law PLLC**
113 Cherry St., PMB 96563
Seattle, WA 98104
lara@cedarlawpllc.com
Tel 206.607.8277 • Fax
206.237.9101

*Complaint* ¶ 90. None of the articles were supportive of the College's response to sexual assault on campus, with many of them challenging the College to do more. *Id.*[1] The College also faced pressure directly from Complainant, who threatened to sue the College for their handling of Title IX issues. *Id.* ¶ 92. And in 2014, Whitman was the subject of an investigation by the Department of Education's Office for Civil Rights that garnered significant media attention. *Id.* ¶ 93. Taken together, the pressure from the school community, as evidenced by the school newspaper and Complainants threat to sue, highlights the pressure the College is under to overzealously prosecute Title IX violations.

Regarding Plaintiff's specific circumstance, the evidence shows that Whitman created an unfair process that Plaintiff had to go through to defend his innocence. The complaint outlines multiple incidents of procedural irregularities, with just a few highlighted below. Put simply, Plaintiff, a male, was denied the same opportunity to present evidence that Complainant, who is femme/nonbinary, was afforded.

---

[1] Article headlines include "Let's Talk about Whitman's Treatment of Sexual Assault," "Whitman Didn't Count You in the Security Report? Me too," "Whitman College Blatantly Ignores Student Safety in Annual Security Report," "Title IX: Survivors Deserve Better," and "Beer Goggles, Munchies, and Title IX Violations. Id.

**PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**- 11
CASE 4:23-cv-05051-MKD

**Cedar Law PLLC**
113 Cherry St., PMB 96563
Seattle, WA 98104
lara@cedarlawpllc.com
Tel 206.607.8277 • Fax
206.237.9101

The complaint highlights four procedural irregularities that tarnished the Title IX process, although Doe has identified far more than the four discussed in detail below. *See Id.* ¶ 50.  (1) The College's reliance on "pattern of conduct" evidence, without giving Doe an equal opportunity to present competing evidence, (*Id.* ¶ 37-40); (2) the prohibition on asking Complainant about their mental health, despite them making their mental health a central component of their story, (*Id.* ¶ 59-61); (3) The College's reliance on "Witness G's" recanted statements, instead of her actual statements, (*Id.* ¶ 60, 69); and (4) accepting and adopting the investigator's conclusions, despite a clear policy against allowing the investigator to reach conclusions. *Id.* ¶ 69, 111.

As alleged in the complaint, one of the most glaring procedural irregularities is the College's one-sided use of evidence. As an example, the College only allowed the use of "pattern of conduct" evidence when it supported Complainant's story but refused to include evidence that tended to support Plaintiff's story. *Id.* ¶ 37-40. As part of the report submitted to the hearing panel, the investigator included allegations by "Witness C" regarding her own relationship with Plaintiff.[2] *Doe Decl.* exhibit 1 at 35-38. Witness C's relationship with Plaintiff is wholly unrelated

---

[2] Witness C's statements were not just relegated to passing references either. As discussed later, the investigator (improperly) drew direct connections between Complainant's story and Witness C's account, thus having a tangible impact on the decision maker's perception of the evidence.

**PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**- 12
CASE 4:23-cv-05051-MKD

**Cedar Law PLLC**
113 Cherry St., PMB 96563
Seattle, WA 98104
lara@cedarlawpllc.com
Tel 206.607.8277 • Fax
206.237.9101

to the sexual relationship between Plaintiff and Complainant. It was simply not relevant and would have been excluded as improper character evidence in any courtroom in Washington – state or federal. *See* Fed. R. Evid. 404(b) and Wash. R. Evid. 404(b).

However, recognizing that the hearing panel was not a courtroom, nor subject to evidence rules, Plaintiff provided to the investigator an account by another third party (referred to in the documents as Witness G), which spoke clearly about her own consensual relationship with Plaintiff. *Doe Decl.* exhibit 2 at 24. Specifically, Witness G stated, "my numerous experiences of sex with [Plaintiff] during the time we lived together between August and December 2020 were ALWAYS consensual, and I never once felt unsafe, uncomfortable, or disrespected." *Id*. Witness G also recounted a story when she was in pain due to a medical condition – "I asked to stop, and he immediately stopped. He asked if I was okay, I told him what was going on, and he completely respected it…" *Id*. None of this information regarding Plaintiff's consensual relationship with Witness G was included in the final report. *See Doe Decl.* exhibit 1 at 47-49 (the report's narrative of Witness G statements). Additionally, the report also failed to include relevant "pattern of conduct" evidence against Complainant. This was not the first time Complainant has accused a male of sexually assaulting them, having done so in December of 2019 before backing

**Cedar Law PLLC**
113 Cherry St., PMB 96563
Seattle, WA 98104
lara@cedarlawpllc.com
Tel 206.607.8277 • Fax
206.237.9101

down from their allegations. *Complaint* ¶ 9-10. However, this information was not included in the report. Having made the decision to allow "pattern of conduct" evidence in the hearing, the College discriminated against Plaintiff by refusing to include exculpatory evidence offered in direct response to evidence offered by the College.

Another example of the use of one-sided evidence is the College's refusal to allow Plaintiff's advocate to question Complainant regarding her mental health. *Complaint* ¶ 59. As the complaint alleges, Complainant is diagnosed with bipolar disorder, and during the time Complainant initially made the allegations against Plaintiff, they were not taking their medications. *Id.* ¶ 59. This is directly relevant to their credibility, as Complainant, in other conversations, talks specifically about altering their perception of events, and alleged that Doe had given them "Stockholm Syndrome" as an excuse for why they continued to have sex with Doe for months. *Doe Decl.,* exhibit 2 at 23, and *Complaint* ¶ 61. Because their mental health could be a plausible explanation for their changing story about the nature of their consensual relationship with the Doe, Plaintiff should have been allowed to introduce evidence relevant to that.

Another, frankly bizarre, decision by the College was the choice to credit Witness G's recanted statements over her actual statements. Witness G originally

**Cedar Law PLLC**
113 Cherry St., PMB 96563
Seattle, WA 98104
lara@cedarlawpllc.com
Tel 206.607.8277 • Fax
206.237.9101

spoke with the investigator in August of 2022 but after reviewing the transcript for a second time, Witness G was "unhappy with how it looked. [She] wanted to clarify some things but was unsure if it was too late to do so or not…" prompting her to speak with Plaintiff's advocate. *Doe Decl.* exhibit 4 at 14. The advocate "told [her] it was important for the investigator to hear the whole truth from [her] and it wasn't too late to reach out to the investigator to revise [her] statement, which was not accurate as written." *Doe Decl.* exhibit 4 at 14. In fact, Whitman policy specifically affords witnesses an opportunity to review and clarify their statements. *Doe Decl.* exhibit 6 at 30. The College effectively denied Witness G her right to do so. On September 29, 2022 Witness G emailed the investigator to "clarify" two statements and add one more. *Id.*  The College's findings specifically state "the panel determined that Witness G's original statements were credible and relevant, and that Witness G's revised and retracted statement was not credible…" *Doe Decl.*, exhibit 3 at 12.[3]  Relying on recanted statements that fit Complainant's narrative, while discounting and refusing to accept the actual, corrected statements that

---

[3] The Panel compounds their mistake by inaccurately stating the Respondent's advisor had a role in revising and retracting Witness G's statement. That is simply incorrect. Witness G specifically informed the hearing panel that Respondent's Advisor did not help write her September 29, 2022 statement and that, "It's entirely my own." *Doe Decl.* exhibit 4 at 6. As part of Plaintiff's appeal, Witness G submitted a sworn affidavit saying, "I confirm that everything I stated in my September 29, 2022 email, which included me recanting statements made during my interview, is true and correct."

**PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**- 15
CASE 4:23-cv-05051-MKD

**Cedar Law PLLC**
113 Cherry St., PMB 96563
Seattle, WA 98104
lara@cedarlawpllc.com
Tel 206.607.8277 • Fax
206.237.9101

conform to Plaintiff's story is fundamentally irrational and procedurally inappropriate.

Finally, the college violated its own policies by allowing the investigator to make "credibility considerations" that were nothing more than credibility determinations. Whitman's policy states "The investigator(s) gather, assess, and synthesize evidence, **but make no conclusions**, engage in no policy analysis, and render no recommendations as part of their report." *Doe Decl.* exhibit 6 (emphasis added).

In direct violation of the prohibition on making conclusions, the investigator concluded that "Information tending to support Complainant's allegations was offered by several witnesses who said they did not currently have an active friendship relationship with her: Witness A, Witness C, Witness D, Witness F," and "As detailed in Section VIII above, witnesses corroborated: (a) seeing a bruise or mark on Complainant's face or neck; (b) Complainant talking to them about a bruise or mark; and (c) Complainant telling them about nonconsensual activity with Respondent." *Doe Decl.* exhibit 1 at 68. The investigator's blanket statement ignores the fact that each witness testified to different events occurring and often times contradicted each other. For example, Witness C never corroborated seeing a bruise on Complainants face, only her neck. *Doe Decl.,* exhibit 1 at 35. However,

**Cedar Law PLLC**
113 Cherry St., PMB 96563
Seattle, WA 98104
lara@cedarlawpllc.com
Tel 206.607.8277 • Fax
206.237.9101

Complainant does not remember ever having a bruise on her neck. *Id.* At 23. Notably, Doe putting his hands on Complainant's neck was described by Complainant as "the things that I like" and that they were okay with "a normal amount" of choking. *Id.,* exhibit 2 at 7 and exhibit 3 at 5. Witness D only testified to seeing Respondent grabbing Complainant's arm at a party, which no other witnesses corroborated. *Complaint,* ¶ 54. Witness F stated that Complainant told him that Doe hit them "all the time," yet Complainant specifically told the investigator that Witness F's account was inaccurate. *Id.* at 55. Finally, other witnesses explicitly did not corroborate the allegations – including Witnesses A and G. *See Doe Decl.* exhibit 2 at 23-25 and *Doe Decl.* exhibit 4 at 12-14.

Further compounding this error is the fact that the investigation's "credibility consideration" section failed to address the two most glaring credibility issues for Complainant (1) that as recently as three days before making their allegations and throughout their relationship, they had repeatedly, and affirmatively stated Plaintiff had not abused them and (2)  that even after making the allegations, Complainant's story varied wildly regarding which specific acts were or were not consensual. *Complaint* at ¶ 49. Both choosing to make credibility "considerations" and not including the most glaring issues, all to the benefit of Complainant, was

**PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**- 17
CASE 4:23-cv-05051-MKD

**Cedar Law PLLC**
113 Cherry St., PMB 96563
Seattle, WA 98104
lara@cedarlawpllc.com
Tel 206.607.8277 • Fax
206.237.9101

procedurally inappropriate and strong evidence of bias against Doe. *Doe Decl.* exhibit 1 at 68.

The procedural irregularities identified in the complaint and expanded on here were all to the benefit of Complainant and denied Plaintiff an opportunity to meaningfully respond to the evidence. Coupled with the background indicia of sex discrimination, Plaintiff is likely to show the decision to expel him was motivated by his sex. As such, he is likely to succeed on his Title IX claim.

## 2. Breach of Contract

Washington courts have long recognized that "the relationship between a student and a university is primarily contractual in nature," "with the specific terms to be found in the university bulletin and other publications," since a formal contract is rarely prepared. *Marquez v. University of Wash.*, 32 Wn. App. 302, 305, 648 P.2d 94 (1982), *review denied, 97 Wn. 2d 1037 (1982), cert. denied,* 460 U.S. 1013 (1983).

Whitman's Student Handbook is precisely the type of "university bulletin and other publications" that inform Plaintiff's contractual rights when attending Whitman. The Handbook contains a specific section regarding "Student Rights and Responsibilities," which states in relevant part that

> Whitman College has a strong commitment to the principle of nondiscrimination in all its forms. In its

**Cedar Law PLLC**
113 Cherry St., PMB 96563
Seattle, WA 98104
lara@cedarlawpllc.com
Tel 206.607.8277 • Fax
206.237.9101

admission, educational and employment practices, programs and activities, Whitman College does not discriminate on the basis of… sex… or any other basis prohibited by… Title IX of the Educational Amendments of 1972…"[4]

The Handbook also specifically links to the Colleges Sexual Harassment, Discrimination and Sexual Misconduct Policy.[5] *Doe Decl.* exhibit 6 at 3. Specifically, within the policy, Whitman states;

> the college has developed internal policies and procedures that provide a prompt, fair, and impartial process for those involved in an allegation of sexual harassment, sexual misconduct or retaliation that reflect college policy and are in compliance with the 2020 Title IX Regulations. Whitman values and upholds the equal dignity of all members of its community and strives to balance the rights of the parties in the grievance process during what is often a difficult time for all those involved.

*Doe Decl.* exhibit 6 at 8. The remainder of the policy identifies the procedural rights that a Respondent has during the Title IX process. *Doe Decl.* exhibit 6 at 29-30. These include:

- "All parties have a full and fair opportunity, through the investigation process, to suggest witnesses and questions, to provide evidence and expert witnesses, and to fully review and respond to all evidence on the record."
- The right to a "thorough, reliable, and impartial investigation"
- The right to have "all available, relevant witness" be interviewed

---

[4] Whitman's Student Handbook is available online at https://www.whitman.edu/dean-of-students/student-handbook/student-rights-and-responsibilities.
[5] https://www.whitman.edu/documents/Global/Policies/Whitman-College-TitleIX-Policy.pdf

**PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**- 19
CASE 4:23-cv-05051-MKD

**Cedar Law PLLC**
113 Cherry St., PMB 96563
Seattle, WA 98104
lara@cedarlawpllc.com
Tel 206.607.8277 • Fax
206.237.9101

- The right to review the draft investigative report, and make comments, to which the investigator "will incorporate relevant elements of the parties' written responses into the final investigation report…"
- Limiting the investigator's role to "gather, assess, and synthesize evidence, but make no conclusions, engage in no policy analysis, and render no recommendations as part of their report."

*Id*. Regarding sanctions, the Handbook describes eight factors, which are nonexclusive factors the panel is expected to consider when deciding on an appropriate sanction. *Doe Decl.* exhibit 6 at 34.

The College breached each of the above promises with Doe. Instead of providing a "prompt, fair, and impartial" process for resolving the Title IX complaint against Doe, the College stacked the deck against him for the same reasons articulated above. Each one of those actions breached the contractual promise made to Doe to provide a "prompt, fair, and impartial" process. The breach of contract was directly and substantially related to Doe's dismissal from the University.

### 3. Violation of the Covenant of Good Faith and Fair Dealing

Furthermore, under Washington law, "[t]here is in every contract an implied duty of good faith and fair dealing" that "obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." *Badgett v. Sec. State Bank*, 116 Wash.2d 563, 569, 807 P.2d 356 (1991). In particular, the duty of

**Cedar Law PLLC**
113 Cherry St., PMB 96563
Seattle, WA 98104
lara@cedarlawpllc.com
Tel 206.607.8277 • Fax
206.237.9101

good faith and fair dealing arises "when the contract gives one party discretionary authority to determine a contract term." *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 86 Wn. App. 732, 738, 935 P.2d 628 (1997). "[G]ood faith limits the authority of a party retaining discretion to interpret contract terms; it does not provide a blank check for that party to define terms however it chooses. *Rekhter v. State,* 180 Wn. 2d 102, 113 (2014)(quoting *Scribner v. Worldcom, Inc.*, 249 F.3d 902, 910 (9th Cir. 2001)). It is possible to breach the covenant of good faith and fair dealing, even if all of the specific contractual terms of fulfilled. *Rekhter,* 180 Wn. 2d at 111-112.

While the overall process employed by the college against Doe violates the covenant of good faith because it was biased against him from the start, there is one component specifically worth highlighting here - the decision to expel Doe just seven weeks before graduation. Expulsion – and thus withholding the college degree that Doe has worked for years and paid over $140,000 in tuition to complete – is the ultimate punishment a college can employ, and the decision to expel Doe in this case is not based on the terms of the handbook.

Rather than analyze all eight factors to develop its sanction decision, the panel only considered the nature of the sustained allegations when it concluded "The sustained policy violations relate to some of the most egregious forms of

**Cedar Law PLLC**
113 Cherry St., PMB 96563
Seattle, WA 98104
lara@cedarlawpllc.com
Tel 206.607.8277 • Fax
206.237.9101

conduct prohibited by Whitman College. Therefore, the panel determined that Respondent should be expelled from Whitman College." *Doe Decl.* exhibit 3 at 13. This statement ignores the remaining factors the panel was expected to consider.

For example, the College should have taken into account that fact that Complainant no longer attends Whitman, thus there would be no further impact on Complainant. The Panel should have also considered the lengthy time frame between when the alleged events occurred, when the allegations were first made, and when this decision was handed down – encompassing all four years of Doe's enrollment. Finally, the College should have considered Doe's proximity to graduation and the fact that it had accepted Doe's tuition payments just to pull the rug out seven weeks before graduation.

Having failed to consider all the relevant factors identified in the policy, the College violated the covenant of good faith and fair dealing when it expelled him in a heavy-handed and overzealous decision guided more by political pressure and a desire to appear tough on sexual assault then by a reasoned and individualized determination that fits the nature of the allegations and the circumstances of this matter.

### 4. Consumer Protection Act

PLAINTIFFS' MOTION FOR A TEMPORARY
RESTRAINING ORDER- 22
CASE 4:23-cv-05051-MKD

**Cedar Law PLLC**
113 Cherry St., PMB 96563
Seattle, WA 98104
lara@cedarlawpllc.com
Tel 206.607.8277 • Fax
206.237.9101

The Consumer Protection Act provides that unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful. RCW 19.86.020. To prevail on a CPA action, the plaintiff must prove an "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." Klem v. Washington Mut. Bank, 176 Wn. 2d 771, 782, 295 P.3d 1179, 1185 (2013)."

Here, the complaint shows that the College engaged in the deceptive practice of guaranteeing to its students a fair and unbiased process for adjudicating disciplinary issues, as stated numerous times in its Code of Conduct, but instead offered a system that was one-sided, and intent on finding Doe responsible for the allegations..

The College's conduct occurred in the course of commerce, considering the fact Doe has spent $140,000 over the last four years in order to attend the college (*Doe Decl.* at 18), and is likewise damaging to Doe's property interest in the education he was pursuing, including the credits he has already received, and his general proximity to graduation. Additionally, the College's actions further delay Doe's entry into the work force, as it is likely he will have to repeat one to two years of study he has already completed. *Doe Decl.* ¶ 17. The College's unlawful conduct is also of interest to the public. As the Supreme Court explained in *Hangman Ridge*

**Cedar Law PLLC**
113 Cherry St., PMB 96563
Seattle, WA 98104
lara@cedarlawpllc.com
Tel 206.607.8277 • Fax
206.237.9101

*Training Stables, Inc. v. Safeco Title Ins. Co,* 105 Wn. 2d 778, 790 (1986), the public interest prong turns on a number of factors, generally regarding whether the action is subject to repetition – "(1) Were the alleged acts committed in the course of defendant's business? (2) Are the acts part of a pattern or generalized course of conduct? (3) Were repeated acts committed prior to the act involving plaintiff? (4) Is there a real and substantial potential for repetition of defendant's conduct after the act involving plaintiff? (5) If the act complained of involved a single transaction, were many consumers affected or likely to be affected by it?" As discussed in detail above, given the enormous pressure on the College and the College's swing towards overzealously prosecuting Title IX complaints, it is likely that more male respondents will find themselves denied a fair opportunity under the College's process.

For those reasons, Doe is likely to prevail on his CPA claim.

**C. Plaintiff Will Suffer Irreparable Harm If He Is Unable to Continue Towards His Degree.**

Plaintiff is just weeks away from graduation and was allowed to continue to pursue his degree during the Title IX investigation, hearing, and appeal. *Doe Decl.* ¶¶ 3 and 19. When that appeal became final, Doe received an email confirming that the College's registrar had processed the expulsion, effective March 28, 2023. *Doe*

**PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**- 24
CASE 4:23-cv-05051-MKD

**Cedar Law PLLC**
113 Cherry St., PMB 96563
Seattle, WA 98104
lara@cedarlawpllc.com
Tel 206.607.8277 • Fax
206.237.9101

*Decl.*, ¶ 16. As such, Plaintiff has exhausted any and all internal appeal processes and has been expelled.

Absent an injunction from this court, he will be unable to complete his degree before his expected graduation date. Neither money damages nor post-judgment injunctive relief enabling his readmission will resolve the harm Doe will suffer. Doe is in the middle of his last semester of classes, which means that should he choose enroll and be accepted in another school during this litigation (even assuming he is able to do so with the findings against him), Doe will, at a minimum, be required retake the classes he is currently in, as well as the possibility of taking another 1 to 2 years of courses, as many colleges and universities do not allow students to transfer and graduate within the same semester. *Doe Decl.* ¶ 17. This delay in graduation would be noticeable in his academic records, which would expose him to questions from graduate schools and potential employers about the causes of the delay. A truthful response to those questions would require disclosure of "forcible rape" allegations against him, which, even if overturned by this Court, would forever alter his path in life. *See King v. Depauw Univ.* No. 14-cv-70, 2014 WL 4197507 at * 13 (S.D. Ind. Aug. 22, 2014) ("the stigma associated with [being found guilty of sexual misconduct by your university] would not be adequately remedied by money"). Several District Courts across the country have identified this very

**PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**- 25
CASE 4:23-cv-05051-MKD

**Cedar Law PLLC**
113 Cherry St., PMB 96563
Seattle, WA 98104
lara@cedarlawpllc.com
Tel 206.607.8277 • Fax
206.237.9101

harm as irreparable. *See Doe v. Univ. of Connecticut, No. 3:20CV92 (MPS), 2020 WL 406356, at \*2 (D. Conn. Jan. 23, 2020)* ("For a college student poised to graduate in a few months, it is highly likely that a two-year suspension and a sanction for sexual assault would indeed "forever change[ ]" the trajectory of his education and career. If he is not permitted to enroll in the Spring 2020 semester, he would need to explain a gap on his résumé in future applications to schools or jobs"), and *Doe v. Siena Coll*., No. 122CV1115BKSTWD, 2023 WL 197461, at \*13 (N.D.N.Y. Jan. 17, 2023) ("The Court concludes that Plaintiff has shown a likelihood of irreparable harm in the absence of injunctive relief. While Defendant argues that a delay in graduation is quantifiable and can be adequately compensated by money damages, Plaintiff has demonstrated that he will suffer more than simply a delay in his graduation") (gathering cases). Plaintiff faces this very same irreparable harm found by these other courts.

**D. The Balance of Hardships Tips Sharply in Favor of Doe**

Plaintiff is willing and able to complete his degree remotely, such that he does not need to be on campus during the pendency of this litigation. *Doe Decl.* ¶ 14. As articulated above, not allowing Doe to proceed towards his degree during this litigation would have far reaching impact on his life moving forward. On the other hand, there is little to no harm to the College. While the College may have an

**Cedar Law PLLC**
113 Cherry St., PMB 96563
Seattle, WA 98104
lara@cedarlawpllc.com
Tel 206.607.8277 • Fax
206.237.9101

interest in protecting its campus, these allegations are from Doe's freshman year, three years prior, and there have been no other incidents of sexual misconduct, including his relationship with Witness C, which the hearing panel referred to as "not unwelcome." *Complaint,* ¶¶ 8 and 66 n. 2. During the pendency of the allegations, investigation, and hearing, Doe was allowed and in fact did continue to attend classes, although he did so remotely. *Doe Decl.* ¶ 19. Furthermore, to the extent their interests can be considered, there is no impact on Complainant because they no longer attend Whitman and do not even live in Washington. *Id* at ¶ 15.

On the other hand, there will be no long-term impact on the College if they are ultimately successful. Doe would not oppose allowing the College to abstain from formally conferring his degree pending this litigation. Meaning, while Doe would be allowed to complete his course work, and his transcript would reflect completion in Spring 2023, the College would not need to formally give him the degree unless and until Doe is successful in this litigation (or a resolution is reached), with a retroactive date reflecting conferral at the end of Spring 2023 semester. As such, the hardship Doe will face far outweighs any prejudice to the College. Plaintiff has demonstrated substantial and irreparable harm should the Court not provide immediate injunctive relief.

**E. Public Interest does not weigh against denying a Temporary Restraining Order**

PLAINTIFFS' MOTION FOR A TEMPORARY
RESTRAINING ORDER- 27
CASE 4:23-cv-05051-MKD

**Cedar Law PLLC**
113 Cherry St., PMB 96563
Seattle, WA 98104
lara@cedarlawpllc.com
Tel 206.607.8277 • Fax
206.237.9101

In analyzing the public interest prong, both the district courts in *Siena College* and *Middlebury College* agreed that, while there is a public interest in maintaining campus safety, both students continued to be enrolled at the school during the investigation and hearing process, and that neither posed a threat to campus safety. *Middlebury Coll.*, 2015 WL 5488109, at *4, and *Siena Coll.*, 2023 WL 197461, at *21. The same is true here. *Doe Decl.* at ¶ 19. As such, granting the TRO does not run afoul of that public interest. As the Court in *Siena* also held, "Siena can still fully enforce its disciplinary policies by revoking Plaintiff's diploma and 'maintain[ing] Plaintiff's disciplinary record in its files' if it prevails in this case" obfuscating any concern about a public interest in enforcing university disciplinary policies. *Siena Coll.*, 2023 WL 197461, at *21. Conversely, there is a public interest in ensuring Colleges and Universities that receive federal financial assistance and make promises to their students are held to those promises. Because of that public interest, this court should grant the temporary restraining order.

## F. Viability of Requested Relief

During the Status Conference, ECF No. 4, this Court instructed parties to brief the viability of implementing a temporary restraining order/preliminary injunction. Plaintiff believes implementing a temporary restraining order in this

**PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**- 28
CASE 4:23-cv-05051-MKD

**Cedar Law PLLC**
113 Cherry St., PMB 96563
Seattle, WA 98104
lara@cedarlawpllc.com
Tel 206.607.8277 • Fax
206.237.9101

matter is easily viable, and only turns on Doe's willingness to work hard to make up for the lost time.

Plaintiff continued to attend class until March 28, 2023. *Doe Decl.* ¶ 19. At the time, Doe was taking four classes – his senior psychology thesis course, an upper-level economics course, a fine arts class (art history), and yoga. *Id.* He is double majoring in Psychology and Economics, and needs only the fine arts credit, the economics credit, and the thesis credit to graduate. *Id* at ¶ 19. After the hearing, he was attending the economics and art class remotely through Zoom, until he was notified of his expulsion. *Id.* Doe sees no barrier to continuing to take those classes over Zoom, although he recognizes the need to work hard and catch-up. *Id* at 20.

The biggest hurdle is his senior psychology thesis course. He needs to complete the following: attend a weekly meeting with his thesis advisor, conduct an online study, analyze the results, attend a weekly seminar, and present the results to other seniors and a panel of psychology professors. Again, meeting with his advisor, conducting the online study and analyzing the results can be done either online or independently. Given zoom and other online platforms capabilities, Doe strongly believes he would be able to present the findings to other seniors and psychology professors virtually as well. As such, Doe believes he can jump back into his classes, redouble his efforts to make up for the roughly 20 days he has

**PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**- 29
CASE 4:23-cv-05051-MKD

**Cedar Law PLLC**
113 Cherry St., PMB 96563
Seattle, WA 98104
lara@cedarlawpllc.com
Tel 206.607.8277 • Fax
206.237.9101

missed, and complete his course work on time. Additional options are discussed in Doe's declaration, ¶¶ 22 and 23.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff asks that this court enter a temporary restraining order and set a date to hear argument on a full preliminary injunction.

Dated this 21st day of April, 2023.

CEDAR LAW PLLC

Lara Hruska, WSBA No. 46531
113 Cherry Street
PMB 96563
Seattle, WA 98104
Lara@cedarlawpllc.com
Attorney for the Plaintiff

**PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**- 30
CASE 4:23-cv-05051-MKD

**Cedar Law PLLC**
113 Cherry St., PMB 96563
Seattle, WA 98104
lara@cedarlawpllc.com
Tel 206.607.8277 • Fax
206.237.9101