1

2
Michael Porter, WSBA No. 37339
MILLER NASH LLP
3
2801 Alaskan Way, Suite 300
Seattle, Washington 98121
4
Telephone: (206) 624-8300
E-Mail: mike.porter@millernash.com
5
Attorneys for Defendant

The Honorable Mary K. Dimke

6

7

8

9

10
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
11
AT RICHLAND

12
JOHN DOE,

13
                    Plaintiff,

14
        v.

15
THE BOARD OF TRUSTEES OF
WHITMAN COLLEGE, a non-profit
16
corporation,

17
                    Defendant.

No. 4:23-cv-05051-MKD

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING
ORDER

18

19

20

21

22

23

24

25

26

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
FOR TEMPORARY RESTRAINING ORDER - 1
(Case No. 4:23-cv-05051)

**MILLER NASH LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## Table of Contents

I.  INTRODUCTION ..................................................................................................1

II.  FACTUAL BACKGROUND...............................................................................1

  A.  Whitman's Sexual Harassment Policy Meets Its Obligations Under Title IX and Provides Parties a Full and Fair Process. ........................................1

  B.  Whitman Followed Its Sexual Harassment Policy After Receipt of a Complaint Reporting Sexual Assault by Plaintiff. ................................................2

III.  ARGUMENT......................................................................................................8

  A.  The Standard for Obtaining a TRO Is Exacting. ...............................................8

  B.  Plaintiff Is Not Likely to Succeed on the Merits of His Claims. ....................9

    1.  Plaintiff Cannot Make a Showing He Is Likely to Succeed on His Title IX Claim.......................................................................................................9

    2.  Plaintiff Cannot Show He Is Likely to Succeed on the Merits of His Breach of Contract Claim...........................................................................17

    3.  Plaintiff Cannot Show He Is Likely to Succeed on the Merits of His Breach of the Covenant of Good Faith and Fair Dealing Claim..................................20

    4.  Plaintiff Cannot Show He Is Likely to Succeed on the Merits of His Washington Consumer Protection Act Claim.................................................22

  C.  PLAINTIFF HAS NOT MADE THE REQUIRED SHOWING FOR A TRO.................................................................................23

    1.  Plaintiff Will Not Suffer Irreparable Harm if an Injunction Is Not Granted. ............................................................................................23

    2.  The Balance of Equities and the Public Interest Favor Whitman. ..............26

    3.  The Balance of Factors Weigh Against the Issuance of a TRO..................29

    4.  Plaintiff Cannot Meet the Required Factors of Either Test. .......................30

IV.  CONCLUSION ................................................................................................30

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
FOR TEMPORARY RESTRAINING ORDER - i
(Case No. 4:23-cv-05051)

**MILLER NASH LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alliance for the Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2011) ............................................................30

*Arizona Dream Act Coal. v. Brewer*,
   757 F.3d 1053 (9th Cir. 2014) ...........................................................23

*Austin v. Univ. of Oregon*,
   2017 WL 4621802 (D. Or. June 7, 2017) *aff'd*, 925 F.3d 1133 (9th
   Cir. 2019) ............................................................................................12

*Bacon v. Woodward*,
   No. 2:21-CV-0296-TOR, 2021 WL 5183059 (E.D. Wash. Nov. 8,
   2021) ..............................................................................................25, 30

*Barrett v. Seattle Country Day Sch.*,
   125 Wash. App. 1044 (2005)..............................................................22

*Becker v. Washington State Univ.*,
   165 Wash. App. 235, 266 P.3d 893 (2011) ..................................18, 20

*Caribbean Marine Servs. Co. v. Baldrige*,
   844 F.2d 668 (9th Cir. 1988) ..............................................................24

*Doe v. Elson S. Floyd Coll. of Med. at Washington State Univ.*,
   No. 2:20-CV-00145-SMJ, 2021 WL 3375725 (E.D. Wash. Aug. 3,
   2021) ...................................................................................................20

*Doe v. Oregon State Univ.*,
   614 F. Supp. 3d 847 (D. Or. 2022) ...............................................17, 19

*Doe v. Regents of University of California*,
   23 F.4th 930 (9th Cir. 2022) ...............................................................10

*Doe v. Samuel Merritt Univ.*,
   921 F. Supp. 2d 958 (N.D. Cal. 2013)..................................................9

**MILLER NASH LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

*Doe v. Seattle Univ.*,
   No. C22-00750-RSM, 2022 WL 1908828 (W.D. Wash. June 3,
   2022) .........................................................................................................18, 26, 29

*In re Excel Innovations, Inc.*,
   502 F.3d 1086 (9th Cir. 2007) ...........................................................................24

*International Ultimate, Inc. v. St. Paul Fire & Marine Ins. Co.*,
   122 Wn. App. 736, 87 P.3d 774 (2004)..............................................................23

*Keystone Land & Dev. Co. v. Xerox Corp.*,
   152 Wash. 2d 171, 94 P.3d 945 (2004) ........................................................20, 21

*Klem v. Wash. Mut. Bank*,
   176 Wn.2d 771, 295 P.3d 1179 (2013).............................................................22

*Leahy v. Edmonds Sch. Dist.*,
   No. C07-1970 RSM, 2008 WL 11508397 (W.D. Wash. Nov. 10,
   2008) ...................................................................................................................23

*Lehrer v. State, Dep't of Soc. & Health Serv.*,
   101 Wn. App. 509, 5 P.3d 722 (2000)................................................................17

*Leingang v. Pierce County Medical Bureau, Inc.*,
   131 Wash. 2d 133, 930 P.2d 288 (1997) ...........................................................23

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
   571 F.3d 873 (9th Cir. 2009) ................................................................................9

*Marquez v. Univ. of Wash.*,
   32 Wn. App. 302, 648 P.2d 94 (1982), *review denied*, 97 Wn. 2d
   1037 (1982) *cert denied*, 460 U.S. 1013 (1983)...............................................18

*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*,
   434 U.S. 1345 (1977)............................................................................................8

*Njoroge v. Vocational Training Institutes, Inc.*,
   No. 2:16-CV-00951-RAJ, 2017 WL 4700297 (W.D. Wash. Oct.
   19, 2017) .............................................................................................................20

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
FOR TEMPORARY RESTRAINING ORDER - iii
(Case No. 4:23-cv-05051-MKD)

**MILLER NASH LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1
2      *Schwake v. Arizona Board of Regents*,
           967 F.3d 940 (9th Cir. 2020) ...................................................................10, 11, 17
3
4      *Sierra On-Line, Inc. v. Phoenix Software, Inc.*,
           739 F.2d 1415 (9th Cir. 1984) ....................................................................8
5
6      *Stanley v. Univ. of So. Cal.*,
           13 F.3d 1313 (9th Cir. 1994) .....................................................................9
7
8      *Stevens v. Hyde Athletic Indus., Inc.*,
           54 Wash. App. 366, 773 P.2d 871 (1989) ..............................................23
9
10     *Stormans, Inc. v. Selecky*,
           586 F.3d 1109 (9th Cir. 2009) ...................................................................8
11
12     *Thompson v. St. Regis Paper Co.*,
           102 Wash. 2d 219, 685 P.2d 1081 (1984) ..............................................19
13
       *Wilkinson v. Rodgers*,
14         No. 1:23-CV-3035-TOR, 2023 WL 2562387 (E.D. Wash. Mar. 17,
15         2023) .................................................................................................8, 30
16     *Winter v. Nat. Res. Def. Council, Inc.*,
           555 U.S. 7 (2008)...............................................................................8, 24
17
18     **Statutes**

       Northwest Workplace Law ...........................................................................3
19
20     Washington Consumer Protection Act ........................................................22

21     **Other Authorities**
22
       34 CFR § 106.45(5)(vii) and § 106.45(6)(i) ............................................13
23
       34 CFR § 106.45(6)(i)................................................................................13
24
       34 CFR § 106.45(b)(5)(i) ...........................................................................14
25
26

**MILLER NASH LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

1

## I.     INTRODUCTION

2   Plaintiff seeks a temporary restraining order (TRO) compelling

3   Whitman College to reinstate him as a student after an investigation, hearing, and

4   appeal resulted in a determination that he had violated Whitman's policy

5   prohibiting sexual misconduct.  Plaintiff is not likely to succeed on the merits of

6   his claims to obtain the extraordinary remedy he seeks.  Plaintiff's complaint and

7   motion reflect disagreement outcome of Whitman's Title IX process, but lack facts

8   that would provide the court with the basis to issue a TRO.  Because it necessarily

9   finds a party responsible or not responsible, the Title IX student conduct process

10  almost always leads to one party believing the outcome is wrong.  As court

11  decisions make clear, respondent claims are not viable when no allegation

12  plausibly gives rise to an inference of discrimination based on respondent's sex.

13  And no allegation or fact here does so here.

14  A college has an obligation to enforce its standards of conduct and

15  through its thorough multi-step process assess the consequence for sexual

16  misconduct.  Plaintiff's argument that the Complainant has left college so a lesser

17  sanction should now be assigned is not a basis to adjust the sanction through a

18  TRO – indeed doing so has consequences with respect to the Complaint's right to

19  know the sanction and Whitman's ability to address allegations of sexual

20  misconduct. As described below, the facts and legal standards show that plaintiff is

21  not entitled to a TRO and his motion should be denied.

22

## II.     FACTUAL BACKGROUND

23  **A.     WHITMAN'S SEXUAL HARASSMENT POLICY PROVIDES
        PARTIES A FULL AND FAIR PROCESS.**

24  Consistent with its obligations under Title IX, 20 U.S.C. §§ 1681-

25  1688, Whitman maintains a written Sexual Harassment Policy that describes its

26

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
FOR TEMPORARY RESTRAINING ORDER - 1
(Case No. 4:23-cv-05051-MKD)

**MILLER NASH LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

process for responding to reports of sexual harassment, discrimination, misconduct, and retaliation in its community.  Declaration of Cassandre Beccai in Support of Defendant's Opposition to Plaintiff's Motion for Temporary Restraining Order (hereinafter "Beccai Decl."), ¶ 2, Ex. A.  The Sexual Harassment Policy sets out detailed internal policies and procedures as well as rights and responsibilities of community members to "ensure compliance with federal and state civil rights laws and regulations, and to affirm its commitment to promoting the goals of fairness and equity in all aspects of the educational program or activity."  Declaration of John Doe in Support of Motion for Temporary Restraining Order (hereinafter "Doe Decl."), Exhibit 6 at 8.  The procedures reflect that Whitman "values and upholds the equal dignity of all members of its community and strives to balance the rights of the parties in the grievance process during what is often a difficult time for all those involved."  Doe Decl., Ex. 6 at 8.

The procedures ensure parties significant process, including (1) written notice of the allegations and process; (2) investigation by a neutral investigator; (3) hearing with witnesses and advisors in front of a neutral panel; and (4) opportunity to appeal the decision to a separate, neutral panel.  Doe Decl., Ex. 6 at 24-37.  Throughout the investigation and hearing process, all parties are provided the same full and fair opportunity to suggest witnesses and questions, to provide evidence and expert witnesses, and to fully review and respond to all evidence on the record.  *Id.*

**B.    WHITMAN FOLLOWED ITS POLICY AFTER RECEIPT OF A REPORT OF SEXUAL ASSAULT BY PLAINTIFF.**

In April 2022, Whitman received a report from Complainant alleging that plaintiff engaged in multiple instances of nonconsensual sexual and physical

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
FOR TEMPORARY RESTRAINING ORDER - 2
(Case No. 4:23-cv-05051-MKD)

MILLER NASH LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

conduct towards Complainant during the Fall 2019 semester while they were dating, including the following:

1. Slapping Complainant
2. Grabbing Complainant's Face, Leaving a Bruise
3. Choking Complainant
4. Using Physical Power, Including Shoving Complainant against a Wall
5. Grabbing Complainant's Hair
6. Using Threats
7. Using Verbal Pressure
8. Putting His Hands Inside Complainant
9. Subjecting Complainant to Nonconsensual Oral Sex
10. Engaging in Nonconsensual Sex with Complainant

Doe Decl., Ex. 3 at 2. Whitman determined that the concerns, if true, would constitute prohibited conduct. Beccai Decl., Ex. B (Notice of Allegations and Investigation). In response, Whitman initiated the procedures described in the Sexual Harassment Policy to investigate, hear, and consider the evidence, including the following:

- **Notice of Allegations and Investigation**: On May 19, 2022, Whitman provided plaintiff with a Notice of Investigation and Allegations that described the allegations by Complainant and the process that would follow and attached the Sexual Harassment Policy. Beccai Decl., Ex. B.

- **Engagement of a Neutral Investigator and Investigation Process**: Whitman's Sexual Harassment Policy provides for a "thorough, reliable, impartial, prompt, and fair" investigation during which the investigator will "gather, assess, and synthesize evidence." Doe Decl., Ex. 6 at 30. Whitman retained an outside, third-party investigator, Trish Murphy of Northwest Workplace Law, to conduct an impartial investigation of Complainant's allegations. Beccai Decl., ¶ 4. Murphy conducted an extensive investigation, during which Complainant and plaintiff were interviewed

**MILLER NASH LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1    multiple times in addition to eleven other witnesses.  Doe Decl., Ex. 1 at 4-6.

2    All interviewees, including witnesses, were provided a copy of their

3    transcript from their respective interviews and an opportunity edit, add, or

4    adjust as needed.  Doe Decl., Ex. 1 at 5.

5    • **Opportunity to Review and Submit Relevant Evidence**: Both parties

6      reviewed the interview transcripts, documentation gathered in the

7      investigation, and an initial version of the investigation report, and they were

8      each provided the same time to submit a response.  Doe Decl., Ex. 1 at 6.

9      On November 17, 2022, following receipt of the full draft report, plaintiff

10     and his Advisor emailed Murphy and Whitman's Title IX Coordinator,

11     Cassandre Beccai, to request an expert psychologist witness testify at the

12     hearing regarding Complainant's mental health and to discuss the impact of

13     Complainant's bipolar disorder on the credibility of Complainant's

14     allegations of sexual assault and dating violence.  Doe Decl., Ex. 2 at 4.

15     Plaintiff was informed that he could include the request in his response to

16     Murphy who would make a relevancy determination and that his request

17     would also be later shared with the hearing officer.  Beccai Decl., ¶ 5.

18     Per Whitman's process, the outside investigator reviews the submissions,

19     incorporates any relevant evidence from the parties' submissions into the

20     report, and any evidence not incorporated is still attached and provided to

21     the hearing panel as an appendix.  Doe Decl., Ex. 1 at 6-7.  Both parties

22     submitted written responses that were considered by the outside investigator,

23     and plaintiff's response did include his request for expert psychologist

24     testimony, but plaintiff offered little explanation as to why the evidence

25     would be relevant.  Doe Decl., Ex. 1 at 6-7. Within the discretion described

26     in the Sexual Harassment Policy, Murphy reviewed plaintiff's request and

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
FOR TEMPORARY RESTRAINING ORDER - 4
(Case No. 4:23-cv-05051-MKD)

**MILLER NASH LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1   determined that such evidence would not be relevant to the allegations.

2   Plaintiff's response incorporating his request for additional evidence was

3   nonetheless included in the appendices to the investigation report, which was

4   later provided to members of the hearing panel.  Doe Decl. Ex. 1 at 6.  The

5   sixty-six-page investigation report, not including appendices, synthesizes the

6   relevant evidence received by Murphy.  Doe Decl., Ex. 1.

7   • **Hearing in front of Panel with Advisors and Cross-examination**: On

8   January 20, 2023, a hearing was held via videoconference in front of a three-

9   person panel that included Joseph Vincent (a non-Whitman employee, third-

10   party panelist), Melissa Clearfield (Chair of the Department of Psychology

11   at Whitman), and Noah Leavitt (Director of the Career Center at Whitman)

12   (together, the "Hearing Panel"), none of whom had previous involvement in

13   the case.  Doe Decl., Ex. 3 at 1; Beccai Decl., ¶ 6.  Plaintiff and Complainant

14   and their advisors attended the hearing, answered questions asked of them in

15   direct examination and cross-examination conducted by the parties'

16   advisors.  Doe Decl., Ex. 3 at 1.

17   • **Issuance of Statement of Finding, Final Determination, and Rationale**:

18   After reviewing all the evidence, including the interviews, witness

19   statements, and evidence contained in the investigation report and

20   appendices, and the testimony at the hearing, on February 13, 2023, the

21   panel issued its Statement of Finding, Final Determination, and Rationale

22   Form ("Statement of Findings") reflecting their thorough review,

23   consideration of credibility of the parties and numerous witnesses, and their

24   ultimate deliberation and application of the evidence against the

25   preponderance of the evidence standard.  Doe Decl., Ex. 3.

26

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
FOR TEMPORARY RESTRAINING ORDER - 5
(Case No. 4:23-cv-05051-MKD)

**MILLER NASH LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1    The Hearing Panel determined that a preponderance of the evidence

2 supported a finding that plaintiff was responsible for five policy violations.  Three

3 of the five policy violations related to dating violence, including Charge 2

4 (Grabbing Complainant's Face, Leaving a Bruise), Charge 4 (Using Physical

5 Power, Including Shoving Complainant Against a Wall), and Charge 5 (Grabbing

6 Complainant's Hair).

7    The Hearing Panel also found plaintiff had violated the portion of the

8 policy prohibition on forcible rape, which is defined therein as "penetration, no

9 matter how slight, of the vagina or anus with any body part or object, or oral

10 penetration without the consent of the complainant."  Doe Decl., Ex. 6 at 17.  First,

11 the Hearing Panel determined that a preponderance of the evidence supported that

12 plaintiff was responsible for subjecting Complainant to nonconsensual oral sex,

13 and specifically that plaintiff "forced Complainant to perform oral sex on

14 Respondent despite Complainant's express desire not to perform oral sex on

15 Respondent" as well as that plaintiff "forcibly ejaculated in Complainant's mouth,

16 despite Complainant's express objections and without Complainant's consent."

17 Doe Decl., Ex. 3 at 10-11.  Second, the Hearing Panel determined that the

18 preponderance of the evidence supported a conclusion that Complainant did not

19 consent to sexual intercourse of their own volition and that plaintiff "used coercive

20 force to engage in sexual penetration of Complainant."  Doe Decl., Ex. 3 at 13.

21    The Statement of Findings includes a detailed discussion of the

22 Hearing Panel's analysis of the evidence on each charge, which relies significantly

23 on the testimony of the multiple other witnesses and was corroborated by evidence

24 separate from addition to Complainant's assertions.  Doe Decl., Ex 3 at 10-11.  The

25 Statement of Findings reflects that it is not a pure "he said/she said" dispute that

26 relies solely on the credibility of the complainant versus the respondent.  The

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
FOR TEMPORARY RESTRAINING ORDER - 6
(Case No. 4:23-cv-05051-MKD)

**MILLER NASH LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1    Hearing Panel relied on evidence and testimony from other witnesses to sustain the

2    charges.  For example, in sustaining Complainant's allegation that plaintiff would

3    aggressively grab Complainant while they were intimate, the Hearing Panel

4    considered that the allegation was corroborated through direct observation of a

5    bruise on Complainant's face and contemporaneous conversations about the source

6    of the bruise through testimony by five witnesses, including witnesses generally

7    adversarial to Complainant's claims.  Doe Decl., Ex. 3 at 4.

8            The Hearing Panel determined the sustained policy violations relate to

9    some of the most egregious forms of conduct prohibited by Whitman and that

10   plaintiff should be expelled from Whitman.  Doe Decl., Ex. 3 at 13.  On

11   February 23, 2023, plaintiff through his legal counsel, submitted a Notice of

12   Appeal with four asserted grounds that mirror the procedural issues on which

13   plaintiff now bases his four claims.  Doe Decl., Ex. 4.  A new, separate panel (the

14   "Appeal Panel") reviewed the appeal.  That Appeal Panel included three Whitman

15   employees, Rebecca Hanrahan (Associate Professor of Philosophy and the Appeal

16   Chair), John Johnson (Vice President for Diversity and Inclusion), and Andrew

17   Johnson (Associate Director of Residence Life and Housing), none of whom had

18   any prior involvement in the case.  Doe Decl., Ex. 5; Beccai Decl., ¶ 7.

19           The Appeal Panel reviewed plaintiff's appeal request, considered

20   allowable grounds for appeal, the bases offered by plaintiff, and engaged in a

21   thorough and objective review of the Notice of Appeal, responses from the Hearing

22   Chair, the Complainant, and plaintiff, the Sexual Harassment Policy, and the

23   records used to render the original decision.  Doe Decl., Ex. 5.  Following its

24   review, the Appeal Panel concluded that the items asserted by plaintiff were not

25   procedural irregularities, noting that it is within the Hearing Chair's role to decide

26   what evidence is relevant.  Doe Decl., Ex. 5.  The Appeal Panel further found that

**MILLER NASH LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1  it is well within the role of the Hearing Panel to assess the credibility of statements

2  of witnesses and that there was nothing in the Credibility Consideration section of

3  the investigation report that would be considered a conclusion as opposed to a

4  synthesis of the evidence, as is permitted.  Doe Decl., Ex. 5.  The sanction assigned

5  by the Hearing Panel was upheld, and plaintiff was dismissed from Whitman

6  effective March 28, 2023.  Doe Decl., Ex. 5; Beccai Decl., ¶ 8.

### III.    ARGUMENT

### A.    THE STANDARD FOR OBTAINING A TRO IS EXACTING.

9           The standard for issuing a TRO is generally the same as the standard

10  for obtaining a preliminary injunction.  *See New Motor Vehicle Bd. of Cal. v.*

11  *Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977).  Both a TRO and a preliminary

12  injunction are "extraordinary remed[ies] that may only be awarded upon a clear

13  showing that the plaintiff is entitled to such relief."  *Winter v. Nat. Res. Def.*

14  *Council, Inc.*, 555 U.S. 7, 24 (2008).  To obtain this relief, a party must

15  demonstrate (1) that he is likely to succeed on the merits, (2) that he is likely to

16  suffer irreparable harm in the absence of preliminary relief, (3) that the balance of

17  equities tips in his favor, and (4) that an injunction is in the public interest (the

18  "*Winter* Factors").  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009)

19  (citing *Winter*, 555 U.S. at 20).[1]

---

[1] When the balance of equities tips "sharply" in the plaintiff's favor, an injunction may be issued if there are "serious questions going to the merits," but only assuming the plaintiff also satisfies the two other *Winter* factors.  *Wilkinson v. Rodgers*, No. 1:23-CV-3035-TOR, 2023 WL 2562387, at *2 (E.D. Wash. Mar. 17, 2023) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).  A "serious question going to the merits" is not met by simply raising questions or bringing allegations but one on which the movant "has a fair chance of success on the merits." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984).

**MILLER NASH LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1         A "prohibitory injunction preserves the status quo." *Stanley v. Univ.*

2   *of So. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994).  An injunction is "mandatory"

3   when it "orders a responsible party to take action."  *Marlyn Nutraceuticals, Inc. v.*

4   *Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878-79 (9th Cir. 2009) (quotations

5   omitted).  Mandatory injunctions are "not granted unless extreme or very serious

6   damage will result and are not issued in doubtful cases or where the injury

7   complained of is capable of compensation in damages." *Id.*, 571 F.3d at 879

8   (citations and quotations omitted).  Courts in this Circuit have in some cases held a

9   request to be readmitted to be prohibitory injunctive relief, but those cases arise out

10   of academic dismissals, not dismissals after sustained sexual misconduct. *See, c.f.,*

11   *Doe v. Samuel Merritt Univ.*, 921 F. Supp. 2d 958, 961 (N.D. Cal. 2013).

12         It does not maintain the status quo to issue an injunction compelling

13   Whitman to readmit a student who was dismissed after a thorough investigation,

14   hearing, and appeal that found him responsible for serious sexual misconduct

15   towards another student.  It would instead compel a private college to invite

16   someone back into its community after considerable process that followed its

17   policies and found him responsible for engaging in serious misconduct as defined

18   by its policies.  Whether a request for mandatory relief of prohibitory relief,

19   plaintiff cannot meet the standard for a TRO.

20   **B.   PLAINTIFF IS NOT LIKELY TO SUCCEED ON THE MERITS OF HIS CLAIMS.**

21   

22        1.   <u>Plaintiff Cannot Make a Showing He Is Likely to Succeed on His Title IX Claim.</u>

23         To successfully bring a claim under Title IX under the theory that

24   gender is a motivating factor in a college's discipline, a plaintiff must show facts

25   that, if true, raise a plausible inference that the college discriminated against the

26   

**MILLER NASH LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

plaintiff on the basis of his sex. *Schwake v. Arizona Board of Regents*, 967 F.3d 940, 947 (9th Cir. 2020) (citations omitted). In the Ninth Circuit, a plaintiff must provide facts that establish not only background indicia of gender bias—including facts that would qualify as external pressure on a college regarding Title IX and internal patterns of practice of bias against male students at a college—but also that identify specific instances in his own disciplinary proceeding, including procedural irregularities, that are rooted in gender bias. *See Doe v. Regents of University of California*, 23 F.4th 930, 936-940 (9th Cir. 2022).

Importantly, in *Schwake* and *Regents*, the plaintiffs were not seeking the extraordinary remedy of a TRO. Instead, the court was ruling on a defendant's motion to dismiss the complaint, which requires a plaintiff to meet a less exacting standard of pleading. To obtain the TRO plaintiff seeks, the standard is rigorous. Plaintiff must not only bring the types of facts identified by *Regents* and *Schwake*, but he must also establish that he likely to succeed on the merits of his claims.

Plaintiff has not done so. As an initial issue, plaintiff does not identify the kind of non-conclusory, relevant factual allegations the Ninth Circuit has found to demonstrate background indicia of gender bias. *Regents*, 23 F.4th at 938. Plaintiff also fails entirely to make the necessary showing of specific instances of bias in his individual case that courts in this Circuit have required. Plaintiff cites the *Schwake* and *Regents* cases, but those plaintiffs alleged detailed and specific facts suggesting gender bias in their individual conduct cases. As an example, in *Regents*, the male respondent plaintiff alleged that the university's Title IX Coordinator told him—while the investigation was pending—that "no female has ever fabricated allegations against an ex-boyfriend in a Title IX setting." 23 F.4th at 939. The *Schwake* plaintiff alleged that the university made a series of serious procedural errors that resulted in a fundamental deprivation of

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
FOR TEMPORARY RESTRAINING ORDER - 10
(Case No. 4:23-cv-05051-MKD)

MILLER NASH LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

process, including that they refused to provide written information about the

complainant's allegations against him.  967 F.3d at 951.  Here, plaintiff's

allegations reflect only disagreement with the decision-making and the outcome of

the process that found he was responsible for certain violations.  They do not come

close to establishing procedural irregularities or that Whitman's decision to find

him responsible was motivated by his sex.

       a.      *Plaintiff fails to identify facts that establish sufficient background indicia of sex discrimination.*

The bulk of plaintiff's allegations of external pressure relate to

outdated federal guidance from 2011 to 2014.  Specifically, plaintiff relies on the

2011 Dear Colleague Letter issued under the Obama administration along with

2014 Q&A issued by the Office of Civil Rights, both of which have been formally

rescinded.  Following the promulgation of the 2020 Title IX regulations under the

Trump Administration, which are effective August 1, 2020, these documents are

no longer applicable guidance, have no application to the process applied by

Whitman, and have no application to Whitman's obligations to comply with

Title IX.  In fact, the Sexual Harassment Policy states that it arises out of and is

compliant with the 2020 Title IX Regulations, which incorporate significant

changes to the Title IX obligations and substantial protections for respondents

since the Obama-era guidance.  The 2011 DCL may have held some weight with

the Ninth Circuit in *Regents* because the underlying conduct and process in that

case occurred around 2017, when university processes were still guided by the

2011 DCL and not the Trump-era 2020 Title IX regulations.

Plaintiff is no more successful in establishing internal patterns or

practice of bias against male students at Whitman.  The student-written articles on

which plaintiff relies only advocate for supportive environments for survivors of

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER - 11 (Case No. 4:23-cv-05051-MKD)

**MILLER NASH LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

sex assault and for colleges to take steps to prevent sexual assault on campus. They don't mention sex or gender.  So, to accept these articles as evidence of anti-male bias one has to accept that only women can be victims of sexual assault.  But of course, both men and women can be subjected to sexual assault.  These articles are not evidence of anti-male bias; they are gender-neutral on their face.

Plaintiff also asserts that Whitman's process discriminates against male students based on an alleged disproportionate gender breakdown of complainants and respondents of sexual assault.  However, a bare allegation that respondents are more often male does not raise gender bias by a college.  *See, e.g.*, *Austin v. Univ. of Oregon*, 2017 WL 4621802 at *6 (D. Or. June 7, 2017) *aff'd*, 925 F.3d 1133 (9th Cir. 2019).  Allegations that the Complainant in this case pressured Whitman are also not evidence of internal pattern or practice of anti-male bias.  As demonstrated by plaintiff bringing this lawsuit, a college can face criticism from both men and women participants in its student conduct process.

      b.    *Plaintiff's allegations about his disciplinary proceeding do not suggest bias based on sex.*

Plaintiff lists five items that he wrongly categorizes as procedural irregularities.  For each, he argues he was denied the same opportunity as Complainant to present evidence and that such a denial was based on his sex.  This is simply inaccurate.  Each item is an instance of a Whitman employee or a neutral third-party exercising decision-making as to the credibility of a witness or the relevancy of evidence within the described student conduct process, within their discretion, and without regard to sex.  Plaintiff just disagrees with their decisions.

To comply with the Title IX regulations, college officials must make relevancy determinations during conduct processes.  The regulations provide that the investigator will complete a report that will "fairly summarize *relevant*

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
FOR TEMPORARY RESTRAINING ORDER - 12
(Case No. 4:23-cv-05051-MKD)

MILLER NASH LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

evidence," and at the hearing, "[o]nly *relevant* cross-examination and other questions may be asked of a party or witness."  34 CFR §106.45(5)(vii) and §106.45(6)(i) (emphasis added).  Further, "[b]efore a complainant, respondent, or witness answers a cross-examination or other question, the decision-maker(s) *must first determine whether the question is relevant.*"  34 CFR §106.45(6)(i) (emphasis added).  Whitman provided a fair process in which plaintiff and Complainant had the same opportunities to present relevant evidence.  Each of plaintiff's proffered bases is set forth and addressed separately below.

> (1)   *It is not procedural error or evidence of anti-male bias to find testimony from plaintiff's other sexual partners that he did not sexually assault them not relevant.*

Plaintiff's assertion that he could not offer "competing evidence" is inaccurate and, regardless, is not procedural error.  Plaintiff sought to have his other sexual partners testify that he did not sexually assault them during their unrelated and separate sexual encounters.  After consideration, Whitman officials determined that such evidence was not relevant to assess the conduct violations alleged by the Complainant.  This determination is not a procedural error.

Plaintiff points to the Hearing Panel's consideration of testimony from Witness C, who reported to Murphy that plaintiff used similar methods of force to compel her to engage in sexual activities.  But as set forth in the Statement of Findings, the evidence that came in related to Witness C was one of several pieces of evidence considered by the Hearing Panel to assess the credibility of the Complainant's allegations related to specific types of force alleged to have been used by plaintiff during sexual acts, including hair pulling, to compel oral sex.

Unlike the evidence related to Witness C, plaintiff offers no information to make his argument anything but an attempt to introduce character

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
FOR TEMPORARY RESTRAINING ORDER - 13
(Case No. 4:23-cv-05051-MKD)

**MILLER NASH LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1    evidence that the Hearing Panel found not to be relevant. By plaintiff's argument,

2    every complainant who reports they have been sexually assaulted face a process in

3    which a respondent is allowed to introduce scores of other partners who said they

4    were not assaulted by the respondent, so the complainant must be lying.

5         Regardless, the Title IX regulations give college officials explicit

6    deference to make relevancy determinations on the facts of each matter. Here, the

7    Hearing Panel considered the evidence and made a relevancy determination that is

8    consistent with not only the Sexual Harassment Policy but also Title IX. Each

9    decision to allow evidence or not cannot be proof of gender bias, without more.

10              (2)    *It is not procedural error or evidence of anti-male bias*
                       *for Whitman officials to determine that evidence of*
11                     *Complainant's mental health is not relevant.*

12         The Title IX regulations require that schools approach evidence

13   related to a party's mental health with consideration for the private, complex, and

14   potentially prejudicial impact of including such evidence. Under the regulations, a

15   school in its grievance process "cannot access, consider, disclose, or otherwise use

16   a party's records that are made or maintained by a physician, psychiatrist,

17   psychologist, or other recognized professional or paraprofessional acting in the

18   professional's or paraprofessional's capacity, or assisting in that capacity, and

19   which are made and maintained in connection with the provision of treatment to

20   the party, unless the recipient obtains that party's voluntary, written consent to do

21   so for a grievance process under this section . . ." 34 CFR § 106.45(b)(5)(i).

22   Therefore, it is far from a matter of right that plaintiff would cross-examine

23   Complainant's regarding Complainant's mental health, when the natural follow-up

24   would be that Complainant would be compelled and forced (rather than

25

26

**MILLER NASH LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

volunteering and consenting) to introduce additional and rebuttal evidence regarding Complainant's own mental health to defend such evidence.

But without needing to reach the point as to whether a party's mental health is ever relevant, this is not procedural error at all let alone error rooted in anti-male bias. If it is automatically procedural error to determine mental health evidence not to be relevant—which is all plaintiff has attempted to argue—then any time a complainant or respondent provides evidence of trauma or impact of sexual assault, they would be subjected to cross-examination and/or expert testimony on their mental health.  Regardless, with the little explanation plaintiff offered as to why it would be relevant and the language of the regulations, it is certainly not evidence of bias based on his sex.

(3)   *It is not procedural error or evidence of anti-male bias for the Hearing Panel to determine that a witness's earlier statement to the investigator is more credible.*

As summarized in the investigation report, Witness G was provided a copy of her interview transcript and the opportunity to edit, add, or adjust anything in it, which she declined.  Doe Decl., Ex. 1 at 50.  After review, Witness G responded, "Those look good to me." *Id.*  As described in the Statement of Findings, the Hearing Panel was provided all statements and made a reasoned determination as to which were more credible:

> "Witness G testified at the hearing that Respondent's advisor spoke with Witness G about how to revise her statement and reviewed the revisions via email before Witness G emailed them to the investigator.  **The panel determined that Witness G's original statements were credible and relevant, and that Witness G's revised and retracted statement as not credible due to the extended period of time between the two statements, Witness G's original approval of her statement, and Respondent Advisor's role in revising and retracting Witness G's statement.**"

**MILLER NASH LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

Doe Decl., Ex. 3 at 12 (emphasis added).  The decision to find Witness G's later statement not as credible is within the role of the Hearing Panel and is anything but "frankly bizarre" if one is informed of the facts as well as plaintiff's counsel's role in its development.  This is not procedural error nor is it evidence of bias.

> (4)   *It is not procedural error or evidence of anti-male bias for Murphy to include a short, bullet pointed list that summarized some witness testimony.*

The Sexual Harassment Policy states that the investigator will "gather, assess, and synthesize evidence."  Doe Decl., Ex. 6 at 30.  Consistent with that, Murphy included a half-page section titled "Credibility Considerations" in the report.  Doe Decl., Ex. 1 at 67.  In this section, Murphy gathered witness testimony and grouped it in a short, bullet-pointed list that "the decisionmaker(s) may want to consider."  It offered no more treatment than organizing what is already available to the panel in the transcripts of the witness interviews themselves.

Plaintiff's objection to this compilation and his assertion that it is evidence of bias against him is unfounded.  His objection further omits that the section also includes a bullet point that notes that the Complainant and Witness C spoke to each other about their alleged experiences with Respondent prior to being interviewed.  Doe Decl., Ex. 1 at 67.  Plaintiff also fails to mention in his motion and does not object to Murphy's "synthesize[d]" evidence in other sections of the report that include evidence that he may see as favorable for him, entitled "Possible Motives Attributed to Complainant."

> (5)   *It is not procedural error or evidence of anti-male bias for the investigator to interview witnesses that the investigator determines to be relevant to the allegations.*

Plaintiff's complaint alleges that Whitman "fail[ed] to interview witnesses identified by Doe that would have provided exculpatory evidence."

**MILLER NASH LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1  Complaint at ¶ 103(f).  His motion does not refer to this alleged fact to support his
2  likelihood of success on the merits of his Title IX claim, nor should it.  As with the
3  above four items, decisions made regarding the relevancy of the potential
4  information offered by certain witnesses are exactly the types of decisions that are
5  within the discretion of a college official in a Title IX proceeding.  Plaintiff offers
6  no additional information—other than his own claims of their relevancy—to
7  transform the exercise of discretion into procedural error based on gender bias.

8  In sum, despite plaintiff's characterizations, each of the above items is
9  more accurately described as frustration or second-guessing of decision-making by
10  Whitman employees related to the relevancy of specific pieces of evidence.
11  Importantly, they fail to establish—as plaintiff must do—that he was subject to
12  discrimination on the basis of sex.  *Doe v. Oregon State Univ.*, 614 F. Supp. 3d
13  847, 857 (D. Or. 2022) ("That Plaintiff was frustrated with the process he received
14  during the [Title IX] investigation does not, by itself, mean that the process was
15  gender-biased.").  Plaintiff has not brought facts to demonstrate the type of sex-
16  based decision-making on which the *Schwake* and *Regents* courts relied, and he
17  therefore fails to meet the heightened standard necessary to obtain a TRO.

18
19  2.    Plaintiff Cannot Show He Is Likely to Succeed on the Merits of His
      Breach of Contract Claim.

20        a.    *Plaintiff has not met his burden to demonstrate that the Sexual
21              Harassment Policy is an enforceable contract with Whitman.*

22  To allege a claim for breach of contract under Washington law,
      plaintiff must first establish that he had a valid contract with Whitman and that
23  Whitman materially breached the contract, causing him damage.  *See Lehrer v.*
24  *State, Dep't of Soc. & Health Serv.*, 101 Wn. App. 509, 516, 5 P.3d 722 (2000).
25  The party asserting the existence of such a contract bears the burden of proving
26

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
FOR TEMPORARY RESTRAINING ORDER - 17
(Case No. 4:23-cv-05051-MKD)

**MILLER NASH LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1  each essential element, including the existence of a mutual intention. *Becker v.*

2  *Washington State Univ.*, 165 Wash. App. 235, 246, 266 P.3d 893, 899 (2011).

3  Specifically, a plaintiff has the burden to demonstrate that the parties "objectively

4  manifest[ed] their mutual assent" to "sufficiently definite terms." *Marquez v.*

5  *Univ. of Wash.*, 32 Wn. App. 302, 305, 648 P.2d 94 (1982), *review denied*, 97 Wn.

6  2d 1037 (1982) *cert denied*, 460 U.S. 1013 (1983).

7         Plaintiff asserts that Whitman made "certain promises regarding how

8  it handled Title IX investigations" in its Sexual Harassment Policy and that those

9  promises are "part of [the] contract" between plaintiff and Whitman.  Complaint at

10  ¶¶ 93-94.  Plaintiff has alleged no facts other than the mere existence of the Sexual

11  Harassment Policy, which is insufficient to establish mutual assent.  In *Doe v.*

12  *Seattle Univ.*, the District Court of the Western District of Washington found the

13  student plaintiff had not demonstrated a likelihood of success on the merits of his

14  breach of contract claim when he also failed to cite to "any Washington law, let

15  alone any cases from the Ninth Circuit, or any specific language from Seattle

16  University's Title IX Policy in support of his argument that the Title IX Policy

17  created an enforceable contract between Plaintiff and the University." No. C22-

18  00750-RSM, 2022 WL 1908828, at *4 (W.D. Wash. June 3, 2022).  Plaintiff

19  similarly does not provide any authority and does not meet the first element of a

20  breach of contract claim.  Therefore, he cannot succeed on its merits.

21         Further, the language of Whitman's Sexual Harassment Policy

22  prevents plaintiff from establishing the policy to be an enforceable contract with

23  him.  It explicitly states that Whitman "reserves the right to make changes to this

24  document as necessary, and once those changes are posted online, they are in

25  effect . . ."  Doe Decl., Ex. 6 at 38.  Whitman exerts sole control over the terms of

26  the Sexual Harassment Policy and updates it as it deems necessary.  Beccai Decl.,

**MILLER NASH LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

¶ 2.  It therefore never clearly manifested assent to its terms.  *See Doe v. Oregon State University,* 614 F. Supp.3d at 861 (Finding that "by maintaining unilateral control over the terms of the [student conduct] Code, OSU clearly never manifested assent to be bound by it" and expressing skepticism that the sexual misconduct policy and procedures "constituted a contract between Plaintiff and OSU because Plaintiff's Complaint states that OSU has since updated its [policy], indicating that OSU maintains unilateral control over those provisions as well.").  In fact, the Sexual Harassment Policy disclaims its creation of a contractual right, stating "[t]his document does not create any legally enforceable protections beyond the protection of the background state and federal laws which frame such policies and codes, generally."  Doe Decl., Ex. 6 at 38; *see also Thompson v. St. Regis Paper Co.*, 102 Wash. 2d 219, 230, 685 P.2d 1081, 1088 (1984) (finding employee handbooks that specifically state that nothing therein alters the at-will employment relationship do not create binding contractual terms).

                 b.     *Plaintiff has not met his burden and does not establish that any term of the Sexual Harassment Policy was breached.*

Even if plaintiff could show the Sexual Harassment Policy constitutes an enforceable contract, he has not raised facts that would demonstrate that Whitman violated the terms.  While courts in Washington acknowledge that the relationship between a student and a university is primarily contractual in nature, they also recognize that "[t]he student-university relationship is unique, and it should not be and cannot be stuffed into one doctrinal category."  *Id.* at 900.  This is not, however, an opening for a plaintiff to fall short of his burden to establish his breach of contract claim.  Instead, courts give colleges "wide latitude and discretion."  *Id.*  Given that, "the standard is that of reasonable expectations—what meaning the party making the manifestation . . . should reasonably expect the other

**MILLER NASH LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

party to give it." *Becker*, 266 P.3d at 900 (quoting *Marquez*, 648 P.2d at 97 (quotations and citations omitted)).  When a college "'act[s] on its announced expectations,' there is no liability for breach of contract." *Doe v. Elson S. Floyd Coll. of Med. at Washington State Univ.*, No. 2:20-CV-00145-SMJ, 2021 WL 3375725, at *5 (E.D. Wash. Aug. 3, 2021) (quoting *Becker*, 266 P.3d at 900).

Here, Whitman acted on its announced expectations.  It provided plaintiff the process described in the Sexual Harassment Policy.  Plaintiff's allegations in support of a breach of contract claim duplicate his Title IX claim. Again, plaintiff's arguments amount to little more than second guessing of Whitman's decision-making.  He can only show that he disagrees with the outcome of the process and the relevancy determinations that Whitman employees made during the process. *Njoroge v. Vocational Training Institutes, Inc.*, No. 2:16-CV-00951-RAJ, 2017 WL 4700297, at *9 (W.D. Wash. Oct. 19, 2017) (finding breach of contract claim by terminated student not based on any policy violation but on the student's subjective interpretation of the policy).

Allegations that Whitman failed to provide a "prompt, fair, and impartial" process or that Whitman "stacked the deck" against plaintiff are unspecific and unsupported.  Whitman acted and made decisions within the language of the Sexual Harassment Policy.  Plaintiff has not met his burden to establish facts or law that demonstrate he is likely to succeed on the merits of his breach of contract claim.

3. <u>Plaintiff Cannot Show He Is Likely to Succeed on the Merits of His Breach of the Covenant of Good Faith and Fair Dealing Claim</u>.

Washington courts have consistently held there is no "free-floating" duty of good faith and fair dealing that is unattached to an existing contract. *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wash. 2d 171, 177, 94 P.3d 945,

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
FOR TEMPORARY RESTRAINING ORDER - 20
(Case No. 4:23-cv-05051-MKD)

**MILLER NASH LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

949 (2004) (citing *Badgett v. Security State Bank*, 116 Wash.2d 563, 569-70, 807 P.2d 356 (1991)).  The duty exists only "in relation to performance of a specific contract term."  *Keystone*, 94 P.3d at 949 (quoting *Badgett*, 807 P.2d at 360).  As addressed above, plaintiff has not met his burden to establish that a contract with Whitman exists, and he is therefore unable and unlikely to succeed on his claim for breach of the covenant of good faith and fair dealing.

Further, plaintiff's stated basis for this claim is that Whitman did not consider every single factor to decide the sanction.  In fact, Whitman did apply other stated criteria.  The Hearing Panel considered additional factors related to plaintiff, including his submitted statement that acknowledged that he had grown and matured since the time frame during which the alleged conduct occurred.  Doe Decl., Ex. 3 at 13.  Regardless, Whitman's Sexual Harassment Policy explicitly states that the listed factors "may [be] include[d]" not that they must be.  Doe Decl., Ex. 6 at 34.  Against this clear language that the factors are permissive, plaintiff cannot establish a breach of the covenant of good faith and fair dealing for not considering the factors that plaintiff would have to assign him a lesser sanction.  Plaintiff's basis for this claim is just a second-guessing of the discretion of the panel—it is that he believes the sanction assigned to him (following a finding of multiple violations of forcible rape as well as dating violence) is too harsh.

To accept this, one would have to agree with plaintiff's argument that the sustained policy violations for forcible oral sex and sexual intercourse as well as dating violence do not represent serious behavior, and a college must always consider every, single additional listed factors to assign a sanction when considering similar policy violations or else they are in breach.  That is not the language of the Sexual Harassment Policy nor is it evidence of such a breach.  As stated by the Hearing Panel, the conduct is serious and concerning to Whitman.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
FOR TEMPORARY RESTRAINING ORDER - 21
(Case No. 4:23-cv-05051-MKD)

**MILLER NASH LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

Whitman does not publish the details of the outcomes of student conduct cases as a matter of practice, nor could it even do so under privacy laws. A statement that the decision to sanction plaintiff was "guided more by political pressure and a desire to appear tough on sexual assault" is unfounded and misplaced.

It is not sufficient to base a claim for the breach of the covenant of good faith and fair dealing on what is essentially second-guessing of the Hearing Panel's deliberation and application of permissive factors. Plaintiff's assertion that the sanction applied was too severe falls far short of the required showing that he is likely to succeed on the merits of his claim.

4.  <u>Plaintiff Cannot Show He Is Likely to Succeed on the Merits of His Washington Consumer Protection Act Claim</u>.

To succeed on a CPA claim, a plaintiff must prove an "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 782, 295 P.3d 1179 (2013) (quoting *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986)). An unfair or deceptive act is one that had the capacity to deceive a substantial portion of the public. *Barrett v. Seattle Country Day Sch.*, 125 Wash. App. 1044 (2005).

Plaintiff has not established that he is likely to succeed on the merits of a consumer protection claim relating to the Title IX conduct process at Whitman. Rather than establish each element, plaintiff's motion again repeats the same generalized and conclusory allegation that Whitman was intent on holding him responsible. This is not enough. The Washington CPA, in name and substance, applies "only to deceptive acts or practices in the conduct of *trade and*

**MILLER NASH LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

commerce." *Leahy v. Edmonds Sch. Dist.*, No. C07-1970 RSM, 2008 WL 11508397, at \*8 (W.D. Wash. Nov. 10, 2008) (citing RCW 19.86.020) (emphasis added); *Leingang v. Pierce County Medical Bureau, Inc.*, 131 Wash. 2d 133, 149, 930 P.2d 288 (1997).  And, "[t]o be liable under the CPA, there must be a contractual relationship between the parties." *International Ultimate, Inc. v. St. Paul Fire & Marine Ins. Co.*, 122 Wn. App. 736, 758, 87 P.3d 774 (2004).  As addressed above, Plaintiff has failed to establish a contract with Whitman.

Washington courts have been clear that the CPA is not intended to provide remedies for injuries to a person but only for injuries sustained in one's business or property.  *Leahy*, 2008 WL 11508397, at \*9 (citing *Washington State Physicians Ins. Exchange & Ass'n v. Fisons Corp.*, 122 Wash. 2d 299, 318 858 P.2d 1054 (1993)).  In *Leahy*, much like here, the plaintiffs alleged a financial injury in that they had to spend considerable amounts of money to address unfair acts of the school district but not the type of injury to business or property contemplated by the statute.  *Id.* at \*8; *see also Stevens v. Hyde Athletic Indus., Inc.*, 54 Wash. App. 366, 370, 773 P.2d 871, 872-73 (1989) ("Had the Legislature intended to include actions for personal injury within the coverage of the CPA, it would have used a less restrictive phrase than "business or property.").  As in *Leahy,* plaintiff also "falls significantly short of even attempting to show how the facts of this case apply to the elements of a valid CPA claim." *Id.* at \*9.

## C.  PLAINTIFF HAS NOT MADE THE REQUIRED SHOWING FOR A TRO

### 1.  Plaintiff will not suffer irreparable harm if an injunction is not granted.

"Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy." *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053,

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER - 23 (Case No. 4:23-cv-05051-MKD)

**MILLER NASH LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

1068 (9th Cir. 2014).  Relief as extraordinary as a TRO is only appropriate where
the threat of harm is "immediate."  *Caribbean Marine Servs. Co. v. Baldrige*,
844 F.2d 668, 674 (9th Cir. 1988).  A plaintiff seeking injunctive relief must
"demonstrate that irreparable injury is *likely* in the absence of an injunction."
*Winter*, 555 U.S. at 22 (emphasis in original).  The primary argument offered by
plaintiff in support a TRO is the proximity to his anticipated graduation.  That is
not enough.  If a plaintiff need only demonstrate proximity to graduation to
establish irreparable harm, every student who did not pass a course in time to
graduate could obtain the extraordinary relief of an emergency injunction because
each of those students would suffer the same harm.

Plaintiff has received the benefit of several semesters of courses and
resulting academic credit such that he would not be starting at zero should he
transfer to another institution—far from it.  As plaintiff acknowledges, he also
continued to attend classes during the pendency of the investigation, hearing, and
appeal—it is only after the full process came to an ultimate determination of
plaintiff's responsibility for the serious conduct violations that the college removed
Plaintiff from its community.  He can receive a degree from another institution
using the credits he earned at Whitman or, should he be successful in his lawsuit
against Whitman, he can receive a degree from Whitman.  The mere dismissal
from a school, like the mere loss of employment, does not in and of itself constitute
irreparable harm sufficient to warrant a TRO.

The mere "possibility" of irreparable harm or of a "speculative injury"
is not enough to justify injunctive relief.  *See Winter*, 555 U.S. at 22; *In re Excel
Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007).  Potential questions by a
future employer asking why he did not complete his degree in four years are not
only speculative—they are unlikely.  College students take breaks including

**MILLER NASH LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

medical or other personal leaves during their academic progression with increasing frequency, particularly for students, like plaintiff, who attended college during the pandemic. In *Doe v. Siena College*, a case cited by plaintiff in support of his assertion of irreparable harm, the harm was much less speculative – the plaintiff had identified a specific job he was set to begin in summer of 2023 that was contingent upon his graduation in May 2023. No. 122CV1115BKSTWD, 2023 WL 197461, at *13 (N.D.N.Y. Jan. 17, 2023). Plaintiff has not brought this court similar facts to transform his speculation into a demonstration of irreparable harm.

Finally, none of the cases cited by plaintiff involve the same delay exhibited by plaintiff in pursuing a TRO. Plaintiff simply cannot meet the standard of irreparable harm while also waiting to file his complaint and motion for several weeks after he was aware the decision was final. Plaintiff was informed by March 22, 2023, letter of the Appeal Panel's decision. Doe Decl., Ex. 5. On March 29, 2023, plaintiff's counsel provided Whitman's counsel a draft complaint and motion for TRO. Declaration of Michael Porter in Support of Defendant's Opposition to Plaintiff's Motion for Temporary Restraining Order ("Porter Decl."), ¶ 2, Ex. A. But plaintiff waited almost two more weeks to file and then chose to file by mail. Porter Decl., ¶ 3, Ex. B. Plaintiff's counsel did not provide Whitman with the filed complaint, summons, and acceptance of service form until April 17, 2023. Porter Decl., ¶ 4, Ex. C.

In *Bacon v. Woodward*, this Court held that where the plaintiffs filed their complaint for several weeks after receiving notice of the basis of their claim and then another four days to effectuate proper service on defendants, their "dilatory litigation practices impl[y] a lack of urgency and irreparable harm." No. 2:21-CV-0296-TOR, 2021 WL 5183059, at *6 (E.D. Wash. Nov. 8, 2021) (citations omitted). The Court should similarly find here that plaintiff's more than

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
FOR TEMPORARY RESTRAINING ORDER - 25
(Case No. 4:23-cv-05051-MKD)

MILLER NASH LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

three-week delay implies a lack of urgency and a lack of irreparable harm. Time is not of the essence, and irreparable harm will not befall plaintiff should this case proceed without the extraordinary intervention of a TRO.

      2.    The Balance of Equities and the Public Interest Favor Whitman and Do Not Favor a "Middle Ground."

Title IX is a federal law that requires educational institutions that receive federal funds to operate their education programs or activities in a manner free of discrimination based on sex, including sexual harassment (which is defined to include sexual assault and dating violence). To meet its obligations under Title IX, if an institution is aware, or should be aware, of sexual harassment in its campus community, its obligations are three-fold – it must take prompt and effective action to end any sex discrimination in its education program or activity, prevent its recurrence, and remedy its effects.

Therefore, when a college receives a report of concerns within its community, an institution must be able to respond and to pursue disciplinary proceedings that follow their stated policies and procedures without defending a motion for a TRO each time. In *Doe v. Seattle University*, the plaintiff male respondent sought a TRO to reinstate him under similar facts, after the private university applied and followed its Title IX policies and process to find the student responsible for sexual offenses and to issue sanctions. 2022 WL 1908828 at *1. The District Court of the Western District of Washington denied the TRO. It found that the balance of equities did not favor the plaintiff student and expressed caution that "[i]ssuing a TRO in this case, and in others similar to it, would likely interfere with Seattle University's ability to enforce its disciplinary standards and its ability to carry out its legal obligation under Title IX to respond to sexual harassment." *Id.*, at *6. The same caution should apply here. The balance of

**MILLER NASH LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1  equities favors Whitman's ability to meet its obligations under federal law and to

2  address conduct within its community when it arises, particularly as here when the

3  manner of addressing it includes such a robust and thorough process.

4         Plaintiff's declaration and motion present an incomplete picture of his

5  suggested option that ignores that a college has obligations to multiple parties,

6  many of whom are not in front of the court.  Plaintiff wrongly dismisses the impact

7  to Complainant at stake in the court's decision whether to issue a TRO.  It is not

8  uncommon for a complainant who reports that she or he was sexually assaulted at

9  an educational institution to thereafter leave that institution *because of* the sexual

10 assault.  In fact, Complainant provided evidence in the process connecting

11 plaintiff's conduct to Complainant's inability to continue a successful academic

12 career and ultimate decision to withdraw from Whitman.  Plaintiff is now using

13 Complainant's departure in his favor.  Allowing a complainant's departure from an

14 institution to be a basis for granting a TRO is a narrow view of harm and does not

15 recognize the impact on parties who are not in front of this court.

16        Title IX's requirement that institutions preserve access to education

17 means that they must provide "remedies to a complainant where a determination of

18 responsibility for sexual harassment has been made against the respondent,"

19 including remedies that "must be designed to restore or preserve equal access to

20 the recipient's education program or activity."  34 CFR 106.45(b)(1)(i).  The

21 Hearing Panel noted in its decision that Whitman should "evaluate Complainant's

22 ability to return to Whitman to continue their academic pursuits, and to address

23 appropriate remedies that will pave a path for their potential return."  Doe Decl.

24 Ex. 3 at 13.  Further, Whitman has obligations under the Title IX regulations and

25 its own Sexual Harassment Policy to provide a written determination regarding

26 responsibility to both parties simultaneously that includes the sanction assigned.

MILLER NASH LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

Complainant received the Statement of Findings that indicated Whitman's decision to dismiss plaintiff, and a TRO that allowed plaintiff to finish his coursework and walk away would completely reverse that determination. Allowing plaintiff to complete his coursework remotely and walk away from Whitman is not a middle ground—it is, essentially, not a sanction.

The outcome of this student conduct case does not exist in a silo. In addition to respondent, it impacts Complainant, it impacts the college's legal obligations described above, it impacts the Whitman's ability to make decisions to promote a safe campus community, it impacts the community's trust in Whitman, and it impacts Whitman's ability to address other instances of similar sexual misconduct in its community and to issue sanctions consistently and fairly. Reinstatement of respondent after he was found responsible for forcible rape and dating violence—even if for remote learning—will be known by members of the Whitman community, and it will have an impact. For survivors of sexual assault to come forward and participate in a college's reporting and grievance processes, they trust that a full, fair, and equitable process will follow. Assertions by plaintiff that he has not assaulted *anyone else* at Whitman since dating plaintiff again gloss over the serious conduct for which he was found responsible.

The public interest lies in a college's ability to enforce its disciplinary standards and policies to comply with Title IX, to provide a campus community that is free from sexual harassment, misconduct, and violence, and to promote trust in its process that encourages community members to report concerns. Therefore, the public interest weighs against providing relief to plaintiff here because of the great disruption and cost to Whitman's obligations and to parties not in front of the court.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
FOR TEMPORARY RESTRAINING ORDER - 28
(Case No. 4:23-cv-05051-MKD)

**MILLER NASH LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

1         3.     <u>The Balance of Factors Weigh Against the Issuance of a TRO</u>.

2         As addressed above, the Court should find that the factors, when

3    balanced against each other, do not weigh in favor of granting a TRO.  Even if

4    plaintiff will experience some harm should the court not intervene, that is not

5    enough and cannot be enough.  A demonstration of impact or harm, in isolation,

6    cannot be the sole factor for issuance of a TRO.  *See Doe v. Seattle Univ.*, 2022

7    WL 1908828, at *7 ("Even if the court were to agree with plaintiff that he may

8    suffer irreparable harm in the absence of a TRO, the Court cannot find that the

9    factors, when balanced against each other, weigh in his favor.").

10         If it were, every employee who is terminated from employment and

11    every student who is dismissed from a university – for any reason – could seek and

12    obtain the extraordinary relief and disruptive intervention of a TRO from the court.

13    And specifically, a college would face a litigation risk any time it imposed

14    discipline on a student who was close to graduation.  A TRO should not a

15    mechanism for what amounts to an "appeal" of Whitman's decision following it

16    thorough multi-step process designed that complies with Title IX.

17         Academic courses at Whitman are generally in-person.  While

18    individual and temporary accommodations may be provided in some circumstances

19    to meet obligations including under the ADA or Section 504, remote learning is

20    not a matter of right nor are all courses set up for remote, virtual learning.  Even

21    so, the mere possibility of remote attendance is not reason to require Whitman to

22    provide it here.[2]  Remote participation in a college's programs and activities by

23    students who have been found responsible for serious conduct like sexual assault is

24     

25    [2] At the time of submission, the undersigned understands that Whitman's academic

26    courses to be in-person, and the expectation is that students attend in person.  To the extent additional information on the availability of remote learning is learned prior the hearing, Whitman's counsel may supplement this information.

**MILLER NASH LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

still participation in a college's community and in classes interacting with other students.  It renders a college's discipline standards and sanctions almost meaningless because of technology.  Remote attendance is equivalent to reinstatement, which is equivalent to no actual sanction following a finding of forcible rape and dating violence.  Accordingly, the Court should find that the balance of factors weighs against the issuance of a temporary restraining order.

        4.      <u>Plaintiff Cannot Meet the Required Factors of Either Test</u>.

The sliding scale test of *Cottrell* is available only when the balance of equities tips "sharply" in the plaintiff's favor and there are "serious questions going to the merits," and even then, only assuming the plaintiff also satisfies the two other factors of irreparable harm and public interest.  *Wilkinson*, 2023 WL 2562387, at *2 (quoting *Cottrell*, 632 F.3d at 1135).  As discussed above, the balance of equities favors Whitman.  The *Cottrell* test is therefore not available to plaintiff to obtain a TRO.  Even under this test, a court will not grant a preliminary injunction unless the public interests in favor of granting an injunction "outweigh other public interests that cut in favor of *not* issuing the injunction."  *Bacon*, 2021 WL 5183059, at *6 (quoting *Cottrell*, 632 F.3d at 1138) (emphasis in original).

## IV.   CONCLUSION

The motion should be denied, and a scheduling order for briefing on a motion to dismiss should be entered if plaintiff intends to pursue his claims.

DATED: April 23, 2023.

By: *s/Michael Porter*

Michael Porter, WSBA No. 37339
MILLER NASH LLP
Pier 70, 2801 Alaskan Way Ste. 300
Seattle, WA  98121-1128
Tel:  (206) 624-8300
Fax:  (206) 340-9599
Email:  michael.porter@millernash.com
Attorneys for Defendant

**MILLER NASH LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1

## CERTIFICATE OF SERVICE

2          I hereby certify that on April 23, 2023, I electronically filed the

3  foregoing with the Clerk of the Court using the CM/ECF system which will send

4  notification of such filing to the following:

5      Lara R Hruska
       Alexander F Hagel
6      CEDAR LAW PLLC
       113 Cherry Street
7      PMB 96563
       Seattle, WA 98104
8      lara@cedarlawpllc.com
       alex@cedarlawpllc.com
9              Staff
       amy@cedarlawpllc.com
10     info@cedarlawpllc.com
       kaitlin@cedarlawpllc.com
11     nicole@cedarlawpllc.com

12     Attorneys for Plaintiff

13         I declare under penalty of perjury under the laws of the United States

14  of America and the state of Washington that the foregoing is true and correct.

15         Signed at Seattle, Washington, April 23, 2023.

16

17                                          *Gaye Johnson*
                                            Gaye Johnson, Legal Assistant
18                                          gaye.johnson@millernash.com

19  4895-7950-2941.4

20

21

22

23

24

25

26

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
FOR TEMPORARY RESTRAINING ORDER - 31
(Case No. 4:23-cv-05051-MKD)

**MILLER NASH LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121