1
2
3
4

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 25, 2023

SEAN F. McAVOY, CLERK

5        UNITED STATES DISTRICT COURT

6        EASTERN DISTRICT OF WASHINGTON

7  JOHN DOE,                          No. 4:23-CV-05051-MKD

8                    Plaintiff,       ORDER DENYING MOTION FOR
                                      TEMPORARY RESTRAINING
9  vs.                                ORDER

10 BOARD OF TRUSTEES OF               ECF No. 8
   WHITMAN COLLEGE, a non-profit
11 corporation,

12                   Defendant.

13        Before the Court is Plaintiff John Doe's Motion for Temporary Restraining

14 Order ("TRO"). ECF No. 8. On April 24, 2023, the Court held a hearing on

15 Plaintiff's motion. Lara Hruska appeared on behalf of the Plaintiff. Michael

16 Porter appeared on behalf of Defendant Board of Trustees of Whitman College

17 ("Whitman").

18        Plaintiff's Complaint, ECF No. 1-1, alleges discrimination in violation of

19 Title IX of the Education Amendments Act, 20 U.S.C. § 1681(a) ("Title IX"),

20 breach of contract, breach of the covenant of good faith and fair dealing, and

ORDER - 1

violations of the Washington Consumer Protection Act, RCW 19.86 ("CPA"), all arising out of his expulsion from Whitman. The instant motion seeks a TRO to compel Whitman to rescind his expulsion imposed as a result of a Title IX disciplinary hearing so that he may complete the semester.

The Court has considered the motion and the record and is fully informed. Plaintiff's Motion for TRO is **DENIED**. As set forth below, the Court sets a scheduling conference in this matter. The parties shall confer prior to the conference and be prepared to present a joint proposed schedule.

## BACKGROUND

The following background facts are derived from the evidence and are generally not in dispute. In September 2019, Plaintiff was a student at Whitman. ECF No. 1-1 at 3 ¶ 8; ECF No. 8-1 at 16. From September 2019 to December 2019, Plaintiff had a sexually active relationship with another student, hereinafter referred to as "Complainant." ECF No. 1-1 at 3 ¶ 8; ECF No. 8-1 at 16-17. In 2021, Complainant began to allege publicly and privately that they did not consent to at least some of the sexual contact with Plaintiff. ECF No. 1-1 at 6-9 ¶¶ 26-35; ECF No. 8-1 at 17-18. In spring 2022, Complainant lodged a Title IX complaint against Plaintiff with Whitman. ECF No. 1-1 at 8 ¶ 36; ECF No. 8-1 at 2 ¶ 5.

Whitman maintains a Student Handbook that includes a section devoted to Student Rights and Responsibilities. ECF No. 8-1 at 149-55. Whitman maintains

ORDER - 2

a policy for the resolution of grievances for sexual harassment, discrimination, and sexual misconduct.  ECF No. 8-1 at 156-86; ECF No. 9-1 at 2-3 ¶ 2, 6-36.

Whitman retained a third-party investigator to conduct an investigation that involved interviews of Complainant, Plaintiff, and a number of witnesses.  ECF No. 1-1 at 8-10 ¶¶ 37-45; ECF No. 8-1 at 8-75; ECF No. 9-1 at 2 ¶ 4.  On November 11, 2022, the investigator completed a draft report.  ECF No, 1-1 at 10 ¶ 45.  On November 30, 2022, Plaintiff submitted a response to the draft report.  ECF No. 1-1 at 10 ¶ 48; ECF No. 8-1 at 77-105.  On December 14, 2022, the investigator completed a Final Investigation Report.  ECF No. 8-1 at 8-75.  On January 20, 2023, Whitman held a Title IX hearing.  ECF No. 1-1 at 15 ¶ 62; ECF No. 9-1 at 2 ¶ 6.  On February 13, 2023, the hearing panel issued a final determination.  ECF No. 8-1 at 114-28.  On February 23, 2023, Plaintiff appealed the decision.  ECF No. 8-1 at 130-44.  On March 22, 2023, Whitman's Appeals Chair upheld the hearing panel's determination.  ECF No. 8-1 at 145-46.

On March 28, 2023, Whitman expelled Plaintiff.  ECF No. 9-1 at 3 ¶ 8.  On March 29, 2023, Plaintiff's counsel sent a draft Complaint and Motion for a TRO to counsel for Whitman.  ECF No. 9-2 at 1 ¶ 2.  Plaintiff filed the Complaint, verified under penalty of perjury, and a Motion for TRO with the Superior Court for Walla Walla County, which the clerk dated April 14, 2023.  ECF No. 1-1; ECF No. 1-2 at 15-36.  On April 19, 2023, Defendant filed a Notice of Removal with

the Eastern District of Washington. ECF No. 1. On April 20, 2023, the Court held

a status conference and set a scheduling order to hear the TRO matter, given one

had been filed in the state court proceeding. ECF No. 7. Pursuant to the

scheduling order issued, on April 21, 2023, Plaintiff filed a renewed Motion for

TRO with this Court, and on April 24, 2023, Whitman filed a response. ECF Nos.

8, 9.

## LEGAL STANDARD

"[T]he legal standards applicable to TROs and preliminary injunctions are

'substantially identical.'" *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir.

2017) (quoting *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240

F.3d 832, 839 n.7 (9th Cir. 2001)). To obtain a TRO, "a plaintiff must establish

'that he is likely to succeed on the merits, that he is likely to suffer irreparable

harm in the absence of preliminary relief, that the balance of equities tips in his

favor, and that an injunction is in the public interest.'" *No on E v. Chiu*, 62 F.4th

529, 536 (9th Cir. 2023) (quoting *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008)).

The court is to apply a "sliding scale" approach to these factors; a strong showing

of one element may offset a weaker showing of another. *hiQ Labs, Inc. v.

LinkedIn Corp.*, 31 F.4th 1180, 1188 (9th Cir. 2022). "[W]hen the balance of

hardships tips sharply in the plaintiff's favor, the plaintiff need demonstrate only

serious questions going to the merits." *Id.* (quotations omitted).

ORDER - 4

It is generally the party seeking an injunction's burden to demonstrate that injunctive relief is warranted. *Right to Life of Cent. Cal. v. Bonta*, 562 F. Supp. 3d 947, 955 (E.D. Cal. 2021). The rules of evidence are relaxed in preliminary injunctive proceedings, and a preliminary injunction may only be awarded upon a clear showing of evidence supporting each factor. *Perlot v. Green*, 609 F. Supp. 3d 1106, 1116 (D. Idaho 2022).

"A prohibitory injunction maintains the status quo whereas a mandatory injunction 'goes well beyond simply maintaining the status quo pendente lite [and] is particularly disfavored.'" *Doe v. Samuel Merritt Univ.*, 921 F. Supp. 2d 958, 962-63 (9th Cir. 2013) (quoting *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994) (internal quotation marks omitted)). The status quo is the "last, uncontested status which preceded the pending controversy." *Id.* (quotations omitted).

## DISCUSSION

Defendant argues that the instant request is one for a "mandatory injunction" and therefore more difficult to attain. ECF No. 9 at 14. Plaintiff's last, uncontested status preceding the controversy between the parties is as an enrolled student. His expulsion is the principal controversy giving rise to his claims. Therefore, the Court considers the instant request to be one for a "prohibitory

1  injunction" to preserve the status quo.  *See Samuel Merritt Univ.*, 921 F. Supp. 2d

2  at 963.  The Court addresses each of the *Winter* factors in turn.

3  **A. Likelihood of Success on the Merits**

4  Plaintiff's claims arise under Title IX, state contract law, and state statutory

5  law.  The Court considers Plaintiff's likelihood of success in each claim.

6  *1. Title IX*

7  "Title IX provides that '[n]o person in the United States shall, on the basis of

8  sex, be excluded from participation in, be denied the benefits of, or be subjected to

9  discrimination under any education program or activity receiving Federal financial

10  assistance . . . .'"  *Schwake v. Ariz. Bd. of Regents*, 967 F.3d 940, 946 (9th Cir.

11  2020) (quoting 20 U.S.C. § 1681(a)).  Whitman submits the Declaration of

12  Cassandre Beccai, the Director of Equity and Compliance and Title IX coordinator

13  for Whitman, who concedes that Whitman is subject to Title IX.  ECF No. 9-1 at 1-

14  2 ¶ 2.

15  Title IX encompasses diverse forms of discrimination on the basis of sex.

16  *Id.* at 946 (citing *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 183 (2005)).

17  One such theory, called "selective enforcement," is when, "regardless of the

18  student's guilt or innocence, the severity of [a] penalty and/or the decision to

19  initiate [a] proceeding was affected by the student's gender."  *Id.* at 947; *Austin v.*

20  *Univ. of Or.*, 925 F.3d 1133, 1138 (9th Cir. 2019); *Yusuf v. Vassar College*, 35

ORDER - 6

F.3d 709, 715 (2d Cir. 1994). Plaintiff, here, advances a selective enforcement

theory. ECF No. 8 at 7.

As an initial matter, to support his argument that the Court should grant

injunctive relief, Plaintiff cites to the Ninth Circuit's pleading standard for Title IX

claims, as explained in *Schwake*, 967 F.3d at 947, and in *Doe v. Regents of the*

*Univ. of Cal.*, 23 F.4th 930, 932 (9th Cir. 2022). ECF No. 8 at 7-8 ("discrimination

need not be the only plausible explanation or even the most plausible explanation

for a Title IX claim to proceed."). In each case, the Ninth Circuit reversed

dismissal of a Title IX complaint for failure to state a claim under Fed. R. Civ. P.

12(b)(6).

While the cases are instructive on the requisite elements of Title IX claims

and the types of evidence that may support them, insofar as Plaintiff aims to meet

the pleading standard to attain injunctive relief, his reliance is misplaced. Plaintiff

may not simply rest upon factual allegations; he must demonstrate that he is likely

to prevail. *Geo Grp., Inc. v. Newsom*, 50 F.4th 745, 753 (9th Cir. 2022); *see also*

*Doe v. Univ. of S. Ind.*, 43 F.4th 784, 791 (7th Cir. 2022) ("In assessing the merits,

we do not accept [movant's] allegations as true, nor do we give him the benefit of

all reasonable inferences in his favor, as would be the case in evaluating a motion

to dismiss on the pleadings.") (collecting cases). Further, "[a] preliminary

injunction is an extraordinary remedy never awarded as of right." *Geo Grp.*, 50

F.4th at 753.  At a minimum, and only if Plaintiff also demonstrates that the "hardship balance" tips in his favor, Plaintiff must demonstrate "serious questions going to the merits" of his claim.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011).  Plaintiffs are not awarded injunctions for surpassing Fed. R. Civ. P. 12(b)(6).  *See Doe v. Vassar College*, No. 19-cv-9601, 2019 WL 6222918, at *11 (S.D.N.Y. Nov. 21, 2019) ("There is no indication that the plaintiff's ability to meet that minimal [pleading] standard indicates that he presents a serious question on the merits for the purposes of demonstrating entitlement to a preliminary injunction.").

Plaintiff claims to offer three broad categories of evidence, as delineated in *Regents of the Univ. of Cal.*, 23 F.4th at 936-37, to demonstrate that he is likely to succeed.  The Court will consider the evidence as presented and categorized but observes that this formulation is derived from the manner in which the plaintiff in *Regents of the Univ. of Cal.* argued their case, not from any court-created test of evidence.  *Id.* at 936-40.

i.  External and Internal Pressures

Plaintiff points to external pressures placed upon Whitman to prevent sexual assaults and harassment on campus for the inference that such pressure resulted in Whitman discriminating against him for being male.  ECF No. 8 at 9-11.  Plaintiff alleges that a "2011 Dear Colleague Letter" from the Department of Education

ORDER - 8

placed pressure on Whitman and informed Whitman's Title IX hearing procedure. ECF No. 8 at 10. Plaintiff alleges that Whitman's student paper has run eight articles since Plaintiff's enrollment that were critical of Whitman's response to sexual assault on campus, that that the individual who submitted the initial complaint against him threatened to sue Whitman, and that the Department of Education's Office for Civil Rights conducted a highly publicized investigation into Whitman in 2014. ECF No. 8 at 11. For each of these allegations, Plaintiff cites to his verified complaint.[1]

Plaintiff highlights that similar evidence was in *Regents of the Univ. of Cal.*, where the Ninth Circuit concluded that "it is plausible that such pressure would affect how the University treated respondents in disciplinary proceedings on the basis of sex[.]" 23 F.4th at 937. Here, Plaintiff must demonstrate more than plausibility, he must demonstrate that he is likely to succeed.

While Plaintiff's verified complaint may establish the existence of various pressures placed upon Whitman, it cannot prove the nature or extent of the influence that those pressures had on Whitman's Title IX policies or to his investigation. Verified complaints may only be relied upon to the extent that they

---

[1] A verified complaint may be treated as an affidavit for consideration of a request for injunctive relief. *Right to Life of Cent. Cal.*, 562 F. Supp. 3d at 951 n.1.

ORDER - 9

offer the personal knowledge of the affiant.  *Right to Life of Cent. Cal.*, 562 F. Supp. 3d at 951 n.1.  For example, Plaintiff's allegation that "the 2011 DCL and related guidance continues to drive [Whitman's] Title IX enforcement mechanisms[,]" ECF No. 1-1 at 20 ¶ 81, is an allegation, not a fact.

Evidentiary concerns aside, Defendant contests the relevance of the various "pressures" that Plaintiff offers.  Defendant highlights that Whitman's Sexual Harassment Policy is explicitly based upon 2020 Title IX Regulations.  ECF No. 9 at 16; ECF No. 8-1 at 156.  Regarding the student articles, Plaintiff only offers the titles of the articles, and Whitman asserts that the articles "don't mention sex or gender" and "are gender-neutral on their face."  ECF No. 9 at 17.  Neither party saw fit to provide the articles for the Court's review, but the titles appear to be critical of Whitman's Title IX policies in gender-neutral fashion.[2]  Without the articles in the record, the Court cannot review the articles to evaluate them.  As a

---

[2] Plaintiff lists the article headlines:  "Let's Talk about Whitman's Treatment of Sexual Assault," "Whitman Didn't Count You in the Security Report? Me too," "Whitman College Blatantly Ignores Student Safety in Annual Security Report," "Title IX: Survivors Deserve Better," and "Beer Goggles, Munchies, and Title IX Violations."  ECF No. 1-1 at 22 ¶ 90.

ORDER - 10

result, the Court cannot reach any conclusion as to any alleged sex or gender-based bias.

Evidence of pressure to discriminate may raise a Title IX plaintiff's claims to the level of plausibility required to survive Fed. R. Civ. P. 12(b)(6). However, here, the Court must find the claims likely, not merely plausible, to grant injunctive relief. The Court considers the evidence relevant but not determinative of discrimination.

ii. Internal Patterns and Practices

Plaintiff argues that Whitman's Title IX process "discriminates against male students because it repeatedly finds male students responsible for violating Title IX regardless of the level of evidence available" and that "female students at Whitman are rarely determined to have violated Title IX, in part because males at Whitman are afraid to report allegations arising under Title IX, given the perceived bias against male students." ECF No. 8 at 10. Again, in support, Plaintiff only points to his verified complaint. ECF No. 8 at 10, *see, e.g.*, ECF No. 1-1 at 21-22 ¶¶ 86-88 ("Upon information and belief, even when a male complainant raises a complaint against a female respondent, Whitman is less likely to find a female respondent liable for misconduct, regardless of the level of evidence against them."). The only statistic Plaintiff offers is that "[Whitman's] 2019-2020 Title IX report indicates that 80% of claimants, whose gender is known, identify as

ORDER - 11

female." ECF No. 1-1 at 21 ¶ 87. Plaintiff admits that "the report does not separately breakdown the status or outcomes of investigations by gender. ECF No. 1-1 at 21 ¶ 87. Plaintiff does not provide the report for the Court's review.

The statistic does nothing to bolster Plaintiff's claim that Whitman more often finds males culpable, credits females complaints against males more often, or is otherwise biased against males. Whitman "can hardly control who files complaints, and the mere fact that most complainants are female does not suddenly render sex-neutral terms discriminatory against males." *Doe v. Oregon State Univ.*, 614 F. Supp. 3d 847, 857 (D. Or. 2022).

In short, Plaintiff offers no evidence to show that the alleged pattern or practice of discrimination is likely. On this point, Plaintiff offers only unsubstantiated allegations, which are insufficient to support injunctive relief.

### iii. Specific Instances of Bias and Procedural Irregularities

Plaintiff offers evidence regarding the process which resulted in his expulsion, which he argues "shows that Whitman created an unfair process that Plaintiff had to go through to defend his innocence." ECF No. 8 at 11. Plaintiff offers his verified complaint, Whitman's December 14, 2022 investigation report, his response to the report, the hearing panel's final determination, his appeal, and a

letter from Whitman upholding his expulsion following the appeal.  ECF No. 8-1 at 2-3 ¶¶ 7-12.

Procedural irregularities in Title IX investigations may support an inference of gender bias.  *Regents of the Univ. of Cal.*, 23 F.4th at 940-41 ("[A]t some point an accumulation of procedural irregularities all disfavoring a male respondent begins to look like a biased proceeding . . . .").

The first procedural irregularity that Plaintiff highlights is Whitman's "one-sided use of evidence" to establish Plaintiff's "pattern of conduct."  ECF No. 8 at 12.  Specifically, that Whitman considered the statements of "Witness C," who recounted nonconsensual contact by Plaintiff, to support Complainant's claims.  ECF No. 8-1 at 42-49, 115, 122.[3]  Plaintiff argues that he attempted to offer another witness, "Witness G," who had a positive and consensual relationship with Plaintiff, but that "[n]one of this information regarding Plaintiff's consensual

_____

[3] Plaintiff argues that such evidence "would have been excluded as improper character evidence in any courtroom in Washington – state or federal."  ECF No. 8 at 13.  Plaintiff does not clarify whether this argument aims to discredit Whitman's procedural process or to establish his innocence, but the Court notes the existence of Fed. R. Evid. 413(a), which provides for the introduction of evidence of other sexual assaults against a sexual assault defendant in a criminal case.

ORDER - 13

relationship with Witness G was included in the final report." ECF No. 8 at 13. Plaintiff further argues that Witness G had attempted to recant certain statements and that Whitman credited Witness G's recanted statements "over her actual statements." ECF No. 8 at 14-15.

This Court is not an appellate court, sitting to review rulings on the admissibility and probity of evidence before Whitman's hearing panel. The Court declines to opine on whether the findings of the hearing panel were supported by sufficient evidence. Insofar as Plaintiff argues that Whitman refused to consider certain evidence—such as Witness G's statements about their relationship or subsequent clarification of prior statements, the argument is not supported by evidence. The hearing panel's determination was based in part on live testimony from Witness G, subject to examination and cross-examination. ECF No. 8-1 at 115, 126. Further, the investigative report included subsequent statements from Witness G. Plaintiff had an opportunity to present information to the investigator and to the panel about his relationship with Witness G, and he did. ECF No. 8-1 at 99-101. The Court declines to review *de novo* the hearing panel's reliance or non-reliance on such evidence.

Whitman's use of Witness G's testimony does not facially indicate procedurally irregularity in the course of Whitman's investigation into Plaintiff's conduct. More importantly, it fails to demonstrate a gender bias in the proceeding.

Plaintiff also argues that the hearing panel failed to credit or consider evidence related to Complainant.  Plaintiff offered evidence indicating Complainant had a pattern of false accusations against male students.  ECF No. 1-1 at 3 ¶ 9-10.  Plaintiff argues that "this information was not included in the report."  ECF No. 8 at 14.  However, "Witness I's" statements about Complainant's retracted allegations against Witness I are included in the investigatory report.  ECF No. 8-1 at 71-72.

Plaintiff highlights that evidence relating to the Complainant's mental health was not considered, although Complainant had alleged that Plaintiff gave Complainant "Stockholm Syndrome," thereby placing mental health at issue.  ECF No. 8 at 14; ECF No. 8-1 at 145-46.  Plaintiff raised this concern in his response to the investigation report and in his appeal of the hearing panel's determination.  ECF No. 8-1 at 79, 140, 145-46.  The Court declines to comment on the relevance or admissibility of the evidence under Whitman's investigation procedures.  Plaintiff may disagree with the hearing panel's refusal to consider Complainant's mental health, but he fails to identify how the refusal is evidence of procedural irregularity or a gender bias.

The final alleged "irregularity" that Plaintiff identifies is the investigator's "Credibility Consideration" included in the final investigation report.  ECF No. 8-1 at 74-75.  Whitman's policies explain the Title IX investigator is to "gather, assess,

and synthesize evidence, but make no conclusions, engage in no policy analysis, and render no recommendations as part of their report." ECF No. 8-1 at 178. Plaintiff contends that the credibility considerations are impermissible under Whitman's own policies. ECF No. 8 at 16. The section includes no ultimate conclusions of credibility or guilt, it is a mere summary of which witness's testimony bolsters other witness's testimony and facts related to credibility. One such fact, that "Complainant and Witness C spoke to each other about their alleged experiences with Respondent prior to being interviewed for this investigation[,]" tends to discredit both Complainant and Witness C, rather than indicate bias against Plaintiff, or male students generally.

As observed in *Regents of the Univ. of Cal.*, allegations of irregularities in the process of a Title IX investigation, presented alongside background indicia of sex discrimination, are enough for a claim to survive Fed. R. Civ. P. 12(b)(6). However, Plaintiff's burden here is to demonstrate that it is likely that gender was "a motivating factor in the decision to discipline" him. *Schwake*, 967 F.3d at 946. As was explained in *Doe v. Oregon State University*, "[t]hat Plaintiff was frustrated with the process he received during the investigation does not, by itself, mean that the process was gender-biased." 614 F. Supp. 3d at 857. Plaintiff fails to demonstrate, or even speculate, that the specific decisions that Whitman made during the investigation were due to his gender.

Plaintiff's motion for a TRO draws heavily upon allegations in his Complaint that would be more relevant for a Fed. R. Civ. P. 12(b)(6) analysis. Indeed, Plaintiff repeatedly emphasizes the allegations in his Complaint, rather than facts on the record.  *See, e.g.*, ECF No. 8 at 10 ("The facts surrounding the investigation and hearing, as alleged in the complaint . . . [,]" "The complaint also alleges that . . . [.]"), 12 ("As alleged in the complaint . . . [.]"), 14 ("As the complaint alleges . . . [.]").  This is perhaps due to the fact that much of the relevant precedent for claims like Plaintiff's was written in response to a motion for failure to state a claim.  *See, e.g.*, *Regents of the Univ. of Cal.*, 23 F.4th 930; *Schwake*, 967 F.3d 940; *Oregon State Univ.*, 614 F. Supp. 3d 847.

The Court recognizes that Plaintiff's motion was filed on an expedited basis; it was filed seven days after his Complaint in state court, two days after the notice of removal to this Court, and three weeks after the effective date of his expulsion. Further, "the rules of evidence do not apply strictly to preliminary injunction proceedings." *Herb Reed Enters., LLC v. Fla. Entm't Mgmt.*, 736 F.3d 1239, 1250 n.5 (9th Cir. 2013).  However, injunctions are "extraordinary remedies" and must made upon factual findings supported by at least some evidence. *Winter*, 555 U.S. at 24.  The evidence before the Court does not demonstrate that Plaintiff is likely to succeed on the merits of his Title IX claim at this stage.

ORDER - 17

### 2. Breach of Contract

Plaintiff argues that he is likely to succeed on his breach of contract claim because he had a contractual relationship with Whitman which incorporated Whitman's Student Handbook and Sexual Harassment, Discrimination, and Sexual Misconduct Policy, the terms of which Whitman breached in its Title IX investigation. ECF No. 8 at 19-20.

The party asserting a contract bears the burden of proving its existence. *Ottgen v. Clover Part Tech. College*, 928 P.2d 1119, 1121 (Wash. Ct. App. 1996). The relationship between a student and university is primarily contractual in nature. *Becker v. Wash. State Univ.*, 266 P.3d 893, 900 (Wash. Ct. App. 2011); *see also Doe v. Elson S. Floyd Coll. of Med. at Wash. State Univ.*, No. 20-CV-145, 2021 WL 3375725, at *5 (E.D. Wash. Aug. 3, 2021). The specific terms of a contract between student and are found in the university bulletin and other publications. *Elson S. Floyd Coll. Med.*, 2021 WL 3375725, at *5. When interpreting a contract in this context, the court should not rigidly apply contract law in all aspects. *Becker*, 266 P.3d at 900. A student handbook may inform the terms of a contract between student and university. *Contreras v. Heritage Univ.*, No. 2:22-CV-3034, 2023 WL 2999381, at *5-6 (E.D. Wash. Apr. 18, 2023). Further, it is conceivable that a university's Title IX policy may constitute an enforceable contract. *Doe v. Seattle University*, No. C22-00750-RSM, 2022 WL

1908828, at *4 (W.D. Wash. June 3, 2022) (citing *Anderson v. Vanderbilt University*, 450 Fed. App'x 500, 502 (6th Cir. 2011)).

Plaintiff asserts that Whitman breached its contractual obligations by discriminating against him, by failing to adhere to its own Title IX process.  ECF No. 8 at 18-19.  With regard to Plaintiff's argument that Whitman breached its "commitment to the principle of nondiscrimination in all its forms[,]" as explained above, Plaintiff does not present sufficient evidence for the Court to find it likely that he was discriminated against.  ECF No. 8 at 19.

With regard to the Title IX process, even presuming that Whitman's Sexual Harassment, Discrimination, and Sexual Misconduct Policy and Procedure constituted a contract, the plain language of the policy explains that it "does not create legally enforceable protections beyond the protection of the background state and federal laws which frame such policies and codes, generally."  ECF No. 8-1 at 186; *see Contreras*, 2023 WL 2999381, at *6.  Given that the "contract" between Whitman and Plaintiff promises protections only to the extent of state and federal laws, and that Plaintiff has failed to demonstrate a likelihood of success on his claims premised upon federal law, Plaintiff has similarly failed to demonstrate that he is likely to succeed on his breach of contract claim.

### 3. Breach of the Covenant of Good Faith and Fair Dealing

Plaintiff argues that Whitman violated their contract's implied covenant of good faith and fair dealing because the Title IX process was biased against him. ECF No. 8 at 20-21. In particular, Plaintiff highlights Whitman's decision to expel him on the cusp of graduation, which he argues did not consider the factors listed for the imposition of sanctions in its Sexual Harassment, Discrimination, and Sexual Misconduct Policy and Procedure. ECF No. 8 at 21-22.

"'There is in every contract an implied duty of good faith and fair dealing,' which 'obligates the parties to cooperate with each other so that each may obtain the full benefit of performance.'" *Fairhaven Health, LLC v. BioOrigyn, LLC*, No. 2:19-CV-1860, 2021 WL 5987023, at *7 (W.D. Wash. Dec. 17, 2021) (quoting *Badgett v. Sec. State Bank*, 807 P.2d 356, 360 (Wash. 1991)). This duty "requires only that the parties perform in good faith the obligations imposed by their agreement[,]" which means that "the duty arises only in connection with terms agreed to by the parties." *Badgett*, 807 P.2d at 360.

With regard to Plaintiff's argument that Whitman's process was biased against him, the Court again cites to the above analysis, which finds insufficient evidence of bias in the Title IX proceeding to support injunctive relief. Beyond general bias, the specific contract term which Plaintiff argues Whitman failed to adhere to with good faith and fair dealing is in the provisions of the Sexual

ORDER - 20

Harassment, Discrimination, and Sexual Misconduct Policy and Procedure. ECF No. 8 at 21-22; ECF No. 8-1 at 182. The policy provides that

> Factors considered when determining a sanction/responsive action may include, but are not limited to:
>
> - The nature, severity of, and circumstances surrounding the violation(s)
> - The respondent's disciplinary history
> - Previous allegations or allegations involving similar conduct
> - The need for sanctions/responsive actions to bring an end to the sexual harassment and/or retaliation
> - The need for sanctions/responsive actions to prevent the future recurrence of sexual harassment and/or retaliation
> - The need to remedy the effects of the sexual harassment and/or retaliation on the complainant and the community
> - The impact on the parties
> - Any other information deemed relevant by the decision-maker(s)

ECF No. 8-1 at 182. The hearing panel explained their sanctions decision as follows:

> When considering appropriate sanctions, the panel reviewed the sanctioning statement submitted by Respondent, and considered Respondent's statements that Respondent had grown and matured since the time frame in which the alleged conduct occurred. The panel also considered Complainant's statements at the hearing, including Complainant's inability to continue a successful academic career and ultimate decision to withdraw from college.

ORDER - 21

> The sustained policy violations relate to some of the most egregious forms of conduct prohibited by Whitman College. Therefore, the panel determined that Respondent should be expelled from Whitman College. Further, the panel encourages Whitman College to evaluate Complainant's ability to return to Whitman to continue their academic pursuits, and to address appropriate remedies that will pave a path for their potential return.

ECF No. 8-1 at 127. Plaintiff argues that the hearing panel "failed to consider all the relevant factors identified in the policy" when issuing the sanction. ECF No. 8 at 22.

To begin, Plaintiff's assertion that the hearing panel did not consider each of the factors listed in the policy is premised solely upon the fact that the hearing panel did not list each factor explicitly in its determination. Plaintiff offers no evidence to find that the hearing panel did not consider other factors not listed. Further, and perhaps more importantly, by the plain terms of the policy, the factors listed are optional, rather than mandatory. Presuming the policy represents a contract, Whitman did not promise that its hearing panel would explicitly review each of the factors that Plaintiff identifies. Whitman's policy only explains that factors considered may include those eight listed. ECF No. 8-1 at 182. Finally, the Court cites again to the final page of the policy, which provides that the protections of the document are limited to those provided by state and federal laws. ECF No. 8-1 at 186. Whitman cannot violate the implied duty of good faith and fair dealing

ORDER - 22

1  for failing to adhere to a term that is not within the contract.  *Badgett*, 807 P.2d

2  360.

3        Plaintiff has failed to demonstrate that he is likely to succeed on his claim

4  for breach of the covenant of good faith and fair dealing.

5            *4.  CPA*

6        "To prevail on a CPA action, the plaintiff must prove '(1) [an] unfair or

7  deceptive act or practice; (2) occurring in trade or commerce; (3) public interest

8  impact; (4) injury to plaintiff in his or her business or property; (5) causation.'"

9  *Klem v. Wash. Mut. Bank*, 295 P.3d 1179, 1185 (Wash. 2013) (quoting *Hangman*

10  *Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (1986)).

11        The deceptive act that Plaintiff identifies is the deceptive practice of

12  guaranteeing its students a fair and unbiased Title IX process but instead offering

13  an unfair and biased system.  ECF No. 8 at 23.  As stated above, Plaintiff has failed

14  to submit evidence upon which the Court can find his claim that the Title IX

15  process against him was unfair or biased.  Plaintiff's CPA claim fails for this

16  reason and the Court declines to consider the remaining elements.

17        In sum, on the record presented to the Court at this stage, Plaintiff has failed

18  to demonstrate any "serious questions going to the merits" of his claims, let alone

19  that he is "likely to succeed on the merits[.]"  *hiQ Labs*, 31 F.4th at 1188.

20

ORDER - 23

**B. Likelihood of Irreparable Harm**

Plaintiff must demonstrate that he is likely to suffer irreparable harm in the absence of the requested preliminary injunctive relief. *Enyart v. Nat'l Conf. of Bar Examiners, Inc.*, 630 F.3d 1153, 1165 (9th Cir. 2011). Irreparable harm is "harm for which there is no adequate legal remedy, such as an award of damages." *Ariz. Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014). The "[m]ere possibility of harm is not enough" to warrant a preliminary injunction. *Enyart*, 630 F.3d at 1165; *see also Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1057-59 (9th Cir. 2009).

Plaintiff argues that, "[a]bsent an injunction from this court, he will be unable to complete his degree before his expected graduation date." ECF No. 8 at 25. Plaintiff argues that, if he is not permitted to re-enroll at Whitman, he will likely be required to take potentially two years of additional courses. ECF No. 8 at 25. Further, employers and graduate schools may note the delay, and ask questions. ECF No. 8 at 25. Regardless of the result of this lawsuit and any potential findings of his guilt or innocence, Plaintiff argues that the stigma of the accusations against him will "forever alter his path in life." ECF No. 8 at 25.

Whitman argues that such harm is merely speculative. ECF No. 9 at 30. The bulk of trial courts across the country have recognized that the harm Plaintiff asserts, here, is cognizable as irreparable harm for preliminary injunction purposes.

1    *See, e.g.*, *N.B. v. United States*, 552 F. Supp. 3d 387, 397 (E.D.N.Y. 2021); *Doe v.*

2    *Wake Forest Univ.*, No. 1:23-CV-1144, 2023 WL 2239475, at *8-10 (M.D.N.C.

3    Feb. 27, 2023); *Doe v. Siena College*, No. 1:22-CV-1115, 2023 WL 197461, at

4    *12-13 (N.D.N.Y. Jan. 17, 2023); *Doe v. Univ. of Conn.*, 3:20-cv-92, 2020 WL

5    406356, at *2 (D. Conn. Jan. 23, 2020); *Doe v. Middlebury Coll.*, No. 1:15-CV-

6    192, 2015 WL 5488109, at *3 (D. Vt. Sept. 16, 2015); *but see Doe v. Univ. of S.*

7    *Ind.*, 3:21-cv-144, 2022 WL 1471037, at *8 *(S.D. Ind. May 10, 2022) (a

8    suspension, without evidence of a disciplinary mark, is not sufficient to

9    demonstrate harm); *Doe v. Vassar*, No. 19-CV-9601, 2019 WL 6222918, at *7

10   (S.D.N.Y. Nov. 21, 2019) (nonspecific allegations that a suspension would harm a

11   plaintiff's future were insufficient to demonstrate harm).

12        Whitman argues that Plaintiff's delay in filing this action should weigh

13   against a finding of irreparable harm.  Whitman explains that, on March 22, 2023,

14   Plaintiff was informed that Whitman denied his appeal, on March 29, 2023,

15   Plaintiff sent Whitman a draft complaint and motion for a TRO, but Plaintiff

16   waited until April 10, 2023, to file the complaint by mail.  ECF No. 9 at 30 (citing

17   *Bacon v. Woodward*, No. 2:21-CV-296, 2021 WL 5183059, at *6 (E.D. Wash.

18   Nov. 8, 2021)).  The Court disagrees that the delay evidences a lack of harm.  In

19   the case offered, the court found the plaintiff dilatory due to a six-week delay after

20   the act giving rise to the suit.  *Bacon*, 2021 WL 5183059, at *6.  Here, Plaintiff has

diligently pursued his request for a TRO, which carries the ultimate goal of reinstating his status as an enrolled student before the semester ends.  In these circumstances a delay of three weeks is not so dilatory to cut against a finding of irreparable harm.

The Court finds that plaintiff has established a likelihood of irreparable harm.  Still, irreparable harm is not sufficient to support preliminary injunctive relief, as the Supreme Court instructed in *Winter*.  555 U.S. at 22 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.").

## C. Balance of Equities

"A court must 'balance the interests of all parties and weigh the damage to each' in determining the balance of the equities." *CTIA – The Wireless Ass'n v. City of Berkely*, 928 F.3d 832, 852 (9th Cir. 2019) (quoting *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009)).  On Plaintiff's side, as the Court found above, harm will result should he be prevented from graduating this semester.  Further, Plaintiff has offered conditions and concessions to accommodate his return to school, should Whitman be required to reverse his expulsion, such as remote attendance.  ECF No. 8 at 26-27; ECF No. 8-1 at 3-4.

However, Plaintiff is incorrect in that a TRO imposes "little to no harm" to Whitman.  ECF No. 8 at 26.

In the circumstances presented, here, the Court finds that greater harm would be imposed by an injunction than the absence of one.[4]  There are, of course, practical burdens placed upon Whitman by an injunction, including to facilitate Plaintiff's attendance with special accommodations.  But more importantly, and as recognized elsewhere, a university has a significant interest in maintaining and enforcing Title IX procedures, and in carrying out sanctions imposed by that

---

[4] Several district courts have found, in similar cases, the harm to the student is greater than the harm to a district court, though in distinct contexts.  *See, e.g.*, *Siena Coll.*, 2023 WL 197461, at *20; *Univ. of Connecticut*, 2020 WL 406356, at *5 ("because the suspension's harm to the Plaintiff outweighs any harm to UConn or anyone else, the balance of equities favors the issuance of a TRO that allows him to enroll and take classes while the parties litigate his motion for a preliminary injunction."); *Middlebury Coll.*, 2015 WL 5488109, at *4 ("The harm Middlebury will suffer if Plaintiff is allowed to remain a student for the fall semester is not as great as the harm Plaintiff will suffer if he is not permitted to return to campus but ultimately prevails in the case.").

1  process.  *See, e.g.*, *Wake Forest Univ.*, 2023 WL 2239475, at *10; *Seattle Univ.*,

2  2022 WL 1908828, at *6.

3      Although Plaintiff minimizes the harm that an injunction would impose on

4  Whitman, the Court, as the Supreme Court instructs, considers a preliminary

5  injunction a heavy-handed and "extraordinary" remedy.  *Winter*, 555 U.S. at 24.

6  Whitman's Title IX procedures are imposed by regulation.  34 CFR §§ 106.44,

7  106.45.  The interference and temporary reversal of Whitman's Title IX processes

8  is no small invasion, especially in light of Plaintiff's weak showing that those

9  processes are discriminatory.

10     Finally, at the hearing, counsel for Plaintiff agreed that this matter could be

11  resolved in a matter of months, meaning that, should he prevail, Plaintiff will have

12  been removed from Whitman for a short amount of time, minimizing disruption to

13  his academic career.  The Court is committed to resolving this matter expeditiously

14  for this reason, as well.  The Court finds that the balance of the equities does not

15  favor a preliminary injunction at this time.

16  **D. Public Interest**

17     The "public interest" inquiry "mostly concerns the injunction's impact on

18  non-parties rather than parties."  *Poretti v. Dzurenda*, 11 F.4th 1037, 1050 (9th Cir.

19  2021) (quotations omitted).  As the district courts in *Siena Coll.*, 2023 WL 197461,

20  at *21, and *Univ. of Connecticut*, 2020 WL 406356, at *5, found, the Court, here,

does not consider Plaintiff an active danger to the Whitman community, particularly if attending classes remotely.

However, an injunction in this instance would likely embolden the targets of Whitman's Title IX investigations to file suit in the hopes of attaining injunctive relief without providing evidence that the investigation was discriminatory.  An injunction would likely discourage Title IX complainants from coming forward, placing the entire Title IX process at Whitman in doubt.  Finally, although no longer attending Whitman, the Court must also consider Complainant's potential interest in returning now that Plaintiff has been expelled pursuant to Whitman's Title IX processes.  The public would not be benefited by an injunction.

**E. Balance of Factors**

Taken together, the *Winter* factors to not support an injunction at this time. In particular, Plaintiff has failed to set forth evidence of discrimination, and has therefore failed to raise serious questions as to the merits of his claims.  The Ninth Circuit has called this "the most important" factor.  *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).  Plaintiff's motions largely argues that his claims are cognizable and would survive a Fed. R. Civ. P. 12(b)(6) motion.  The inquiry for preliminary junction requires more than a showing of allegations amounting to a plausible claim for relief.  *Univ. of S. Ind.*, 43 F.4th at 791.  And, although Plaintiff may suffer irreparable harm without an injunction, the Court must also consider the

harm to Whitman and to the public, which is considerable.  The Court declines to issue an injunction.

## CONCLUSION

For the reasons stated herein, Plaintiff's Motion for TRO is **DENIED**.  As set forth below, the Court sets a scheduling conference in this matter.  The parties shall confer prior to the scheduling conference and be prepared to present a joint proposed schedule.

Accordingly, **IT IS ORDERED:**

1.      Plaintiff's Motion for Temporary Restraining Order, **ECF No. 8**, is **DENIED**.

2.      A scheduling conference is scheduled for **May 1, 2023, at 2:15 p.m.**, in **Richland, Washington.**  The parties may attend remotely by video.

**IT IS SO ORDERED.**  The District Court Executive is directed to file this Order and provide copies to counsel.

DATED April 25, 2023.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 30